**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EMILY EVANS and CAITLIN HASSETT, on behalf of themselves and all others similarly situated, | Case No.: 22-CV-6301 |
| Plaintiffs, | Judge Virginia M. Kendall |
| v. | |
| CHURCH & DWIGHT CO., INC., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED**
**MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Dated:  May 25, 2023

**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow
Kristen Lake Cardoso
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
E-mail: ostrow@kolawyers.com
          cardoso@kolawyers.com

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Fax: (212) 989-9189
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
Stephen A. Beck**
Jonathan L. Wolloch**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512

i

Fax: (305) 676-9006
E-mail: swestcot@bursor.com
    sbeck@bursor.com
    jwolloch@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
E-mail: gklinger@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Erin J. Ruben
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (919) 600-5000
E-mail: eruben@milberg.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Admitted Pro Hac Vice*
**Pro Hac Vice forthcoming*

*Attorneys for the Settlement Class*

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................1

II.   SUMMARY OF THE ACTION ..................................................................................2

    A.  Plaintiffs' Allegations ..........................................................................................2

    B.  Litigation, Mediation, and Settlement ................................................................2

III.  MATERIAL TERMS OF THE SETTLEMENT ........................................................4

    A.  Settlement Class ...................................................................................................4

    B.  Monetary & Non-Monetary Relief to the Settlement Class.................................5

        1.  Monetary Relief ...........................................................................................5

        2.  Non-Monetary Relief ...................................................................................7

    C.  Settlement Class Notice .......................................................................................7

    D.  Claims Process .....................................................................................................8

    E.  Disposition of Residual Funds .............................................................................9

    F.  Settlement Administrator .....................................................................................9

    G.  Opt-Out and Objection Procedures....................................................................11

    H.  Release of Claims ..............................................................................................12

    I.  Attorneys' Fees, Costs, and Service Awards .....................................................13

IV.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS PRELIMINARY APPROVAL ................................................................................14

    A.  The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (Factor 1) ...............................................................................15

    B.  Further Litigation Would Be Complex, Costly, and Lengthy (Factor 2)...........................16

    C.  The Court Cannot Assess the Reaction of the Settlement Class Until After Notice Issues (Factor 3).................................................................................................17

    D.  Competent Counsel Endorse this Agreement (Factor 4) ...................................17

    E.  Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5) .....................................................................................18

V.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ................................................................................................19

    1.   Rule 23(a) is Satisfied .............................................................................19

        a.   The class is so numerous that joinder of all members is impracticable ......................20

        b.   There are questions of law and fact common to the class ...........................................20

        c.   The claims of the representative parties are typical of the claims of the class ...........21

        d.   The representative parties will fairly and adequately protect the interests of the class ...................................................................................21

    2.   Rule 23(b)(3) is Satisfied ........................................................................22

        a.   Common questions predominate ..................................................................22

        b.   Class treatment of Plaintiffs' claims is superior ...........................................23

VI.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL ................23

VII.  THE NOTICE PROGRAM CONTAINS THE BEST NOTICE PRACTICABLE ...............24

VIII. PROPOSED SCHEDULE OF POST-SETTLEMENT EVENTS ...........................................25

IX.   CONCLUSION .................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                      <u>Page(s)</u>

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) ................................................... 18

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012)............................. 15

*Amchem, Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)................................................................................................................ 22, 23

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ................................................................................................. 15, 18

*Basic v. Levinson*,
   485 U.S. 224 (1988)...................................................................................................................... 23

*Chaffee v. A&P Tea Co.*,
   Nos. 79 C 2735, 79 C 3625, 1991 WL 5859 (N.D. Ill. Jan. 16, 1991) ............................... 24, 25

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ..................................................................................................... 17

*CV Reit, Inc. v. Levy*,
   144 F.R.D. 690 (S.D. Fla. 1992).................................................................................................. 21

*E.E.O.C. v. Hiram Walker & Sons, Inc.*,
   768 F.2d 884 (7th Cir. 1985) ....................................................................................................... 15

*Felzen v. Andreas*,
   134 F.3d 873 (7th Cir. 1998) ................................................................................................. 14, 15

*Gen. Tel. Co. of the Sw. v. Falcon*,
   457 U.S. 147 (1982)...................................................................................................................... 23

*Haynes v. Logan Furniture Mart, Inc.*,
   503 F.2d 1161 (7th Cir. 1974) ..................................................................................................... 23

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 330 (N.D. Ill. 2010).................................................................................... 15, 16, 22

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ........................................................................................ 18

*In re Netflix Privacy Litig.*,
   No. 5:11-cv-00379 EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................. 17

*In re Southwest Airlines Voucher Litig.*,
　No. 11-cv-8176, 2013 WL 4510197 (N.D. Ill. Aug. 26, 2013) ............................................... 16

*In re TikTok, Inc., Consumer Priv. Litig.*,
　565 F. Supp. 3d 1076 (N.D. Ill. 2021) .................................................................................... 21

*Isby v. Bayh*,
　75 F.3d 1191 (7th Cir. 1996) ................................................................................... 14, 15, 18

*Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*,
　Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ..................... 15

*Kitzes v. Home Depot, USA, Inc.*,
　374 Ill. App. 3d 1053, 313 Ill.Dec. 293, 872 N.E.2d 53 (2007) ............................................. 20

*Lane v. Facebook, Inc.*,
　696 F.3d 811 (9th Cir. 2012) ................................................................................................ 17

*McCabe v. Crawford & Co.*,
　210 F.R.D. 631 (N.D. Ill. 2002) ............................................................................................ 20

*McKinnie v. JP Morgan Chase Bank, N.A.*,
　678 F. Supp. 2d 806 (E.D. Wis. 2009) .................................................................................. 18

*Parker v. Risk Mgmt. Alternatives, Inc.*,
　206 F.R.D. 211 (N.D. Ill. 2002) ...................................................................................... 20, 21

*Patterson v. Stovall*,
　528 F.2d 108 (7th Cir. 1976) ................................................................................................ 14

*Retired Chi. Police Ass'n v. City of Chi.*,
　7 F.3d 584 (7th Cir. 1993) .................................................................................................... 21

*Schulte v. Fifth Third Bank*,
　805 F. Supp. 2d 560 (N.D. Ill. 2011) ............................................................................... 16, 17

*Smith v. Sprint Commc'ns Co.*,
　387 F.3d 612 (7th Cir. 2004) ................................................................................................ 14

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
　463 F.3d 646 (7th Cir. 2006) ........................................................................................... 15, 18

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
　309 F.3d 978 (7th Cir. 2002) ................................................................................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
　564 U.S. 338 (2011) ............................................................................................................. 20

*Zolkos v. Scriptfleet, Inc.*,
   No. 12 Civ. 9230, 2014 WL 7011819 (N.D. Ill. Dec. 12, 2014) ....................................... 14, 19

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................................... 19, 20, 21

Fed. R. Civ. P. 23(a)(1) ................................................................................................ 20

Fed. R. Civ. P. 23(a)(2) ................................................................................................ 20

Fed. R. Civ. P. 23(a)(3) ................................................................................................ 21

Fed. R. Civ. P. 23(a)(4) ................................................................................................ 21

Fed. R. Civ. P. 23(b)(3) ........................................................................................... 22, 24

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................... 24

Fed. R. Civ. P. 23(e)(1) ................................................................................................ 24

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................... 24

Fed. R. Civ. P. 23(g)(1)(B) ........................................................................................... 24

Fed. R. Evid. 408 .......................................................................................................... 3

**Statutes**

28 U.S.C. § 1407 ........................................................................................................... 3

815 ILCS 505/1 .............................................................................................................. 3

**Other Authorities**

*Newberg* § 11.27 ......................................................................................................... 19

*Newberg* § 11.41 .........................................................................................................14

Plaintiffs, Emily Evans and Caitlin Hassett, individually, and on behalf of the Settlement Class[1], respectfully submit this Memorandum of Law in support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

This Action involves Defendant, Church & Dwight Co., Inc.'s, sale of its Batiste™ brand dry shampoo products, which Plaintiffs allege were deceptively marketed and sold to consumers containing harmful levels of a chemical called benzene. C&D disputes these allegations.

Plaintiffs, individually, and on behalf of the Settlement Class, and C&D have entered into a Settlement to resolve Plaintiffs' claims on a class-wide basis. As demonstrated below, the Settlement provides significant relief for the Settlement Class, including a non-reversionary Cash Settlement Fund in the amount of $2,500,000.00, a $600,000.00 Voucher Settlement Program, and prospective injunctive relief worth millions of dollars in future savings.

Balancing the risks against the substantial benefits, the Court should find that the Settlement is fair, adequate, and reasonable and enter an order: (i) granting Preliminary Approval of the Settlement; (ii) provisionally certifying the Settlement Class for settlement purposes; (iii) appointing the Plaintiffs as Class Representatives and Class Counsel as counsel for the Settlement Class; (iv) approving the form and manner of the Notice Program; (v) appointing Angeion Group as Settlement Administrator; (vi) establishing deadlines for the Opt-Out Period and Objection Period; and (vii) scheduling a Final Approval Hearing at which the Court will consider Final Approval of the Settlement, Class Certification, and Class Counsel's Application for Attorneys' Fees, Costs and Service Awards for the Class Representatives.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement and Releases, attached hereto as *Exhibit 1*.

## II.    SUMMARY OF THE ACTION

### A.  Plaintiffs' Allegations

This case arises from C&D's sale of Batiste™ Products that were allegedly tested and found to contain harmful levels of benzene. Plaintiffs allege that C&D failed to adequately disclose to consumers this alleged presence of benzene in the Batiste™ Products.

On October 31, 2022, Valisure, a third-party analytical laboratory, submitted a citizens' petition to the FDA in which it reported that it had purportedly detected higher levels of benzene in specific batches of dry shampoo products sold by various manufacturers. Among those products were various Batiste™ Products, including batches of "Dry Shampoo Bare – 4.23 oz," and "Dry Shampoo Clean & Bare – 6.73 oz." Complaint (ECF No. 27) ¶ 15. Plaintiffs allege that benzene is a carcinogenic impurity that has been linked to leukemia and other cancers. *Id.* ¶ 1.

Plaintiffs allege that C&D made false and misleading representations and omissions about the qualities and ingredients of the Products, including by failing to disclose the presence of benzene, which Plaintiffs allege would render the products adulterated and misbranded. *Id.* ¶¶ 20-24. Plaintiffs allege that C&D's failure to disclose is material to consumers who purchased the Products. *Id.* ¶ 35.  Specifically, Plaintiffs allege that when purchasing the Products, they did not know, and had no reason to know, that the Products were adulterated and misbranded, especially at the point of purchase. *Id.* ¶ 33. Plaintiffs further allege that they would not have purchased the Products had they known that they contained or risked containing benzene. *Id.*

As a result of the allegedly false and misleading representations on the Products' labels, Plaintiffs allege they suffered damages. *Id.*  ¶¶ 81, 94, 101.

### B.  Litigation, Mediation, and Settlement

On November 10, 2022, Plaintiff, Emily Evans, filed this Action against C&D in the United States District Court for the Northern District of Illinois. (ECF No. 1). On or about December 19,

2022, C&D filed a motion with the Joint Panel for Multidistrict Litigation to centralize several actions that had been filed alleging similar facts and any future "tag-along" actions for coordinated pretrial discovery and proceedings in a multidistrict litigation pursuant to 28 U.S.C. § 1407. As a result of the motion, counsel for the plaintiffs in each of the filed actions conferred and ultimately decided to pursue their claims in a single action in the Northern District of Illinois.

On February 1, 2023, Plaintiffs, Emily Evans and Caitlin Hassett, filed the Complaint in this Action, asserting claims on behalf of themselves and a nationwide class, an Illinois subclass, and a consumer fraud multi-state subclass against C&D. (ECF No. 27). Plaintiffs sought equitable relief and to recover damages and restitution for: (i) violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA") 815 ILCS 505/1, *et seq*.; (ii) fraud; (iii) unjust enrichment, and (iv) violations of the state consumer fraud acts.

On February 10, 2023, the Parties attended a status hearing before the Honorable Virginia M. Kendall, at which time Judge Kendall ordered a briefing schedule for C&D's anticipated motion to dismiss and stayed discovery pending a ruling on the motion to dismiss. (ECF No. 39). C&D filed its Motion to Dismiss on February 15, 2023. (ECF Nos. 41-42). Plaintiffs filed their memorandum in opposition to Defendant's Motion to Dismiss on March 8, 2023. (ECF No. 45). C&D filed its reply on March 22, 2023. (ECF No. 48). Both Parties also filed notices of supplemental authority. (ECF Nos. 47, 49).

On April 10, 2023, the Parties engaged in a full-day mediation with Hon. Steven M. Gold (Ret.) of JAMS. Prior to the mediation, the Parties exchanged discovery pursuant to Fed. R. Evid. 408, which allowed them to fully evaluate a potential settlement. *See* Joint Declaration of Class Counsel ("Joint Decl."), attached as ***Exhibit 2***, ¶ 21. The Parties also engaged in substantive settlement discussions, which enabled Plaintiffs to make a detailed settlement demand.

Additionally, the Parties drafted confidential mediation briefs that were submitted to Judge Gold. *Id.*

As a result of the information exchanged by the Parties in advance of mediation, Plaintiffs and Class Counsel entered settlement negotiations with substantial information about the merits of the legal claims and factual allegations. *Id.* ¶ 22. Plaintiffs and Class Counsel had the ability to review key documents and information in this matter, which allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* ¶ 29. During the mediation, the Parties thoroughly discussed and vetted the facts and law as Judge Gold engaged in a critical analysis of the Parties' arguments. *Id.* ¶ 23. After a full day of mediation, the Parties reached a settlement in principle, including with respect to the monetary and non-monetary relief to Settlement Class members, the settlement structure, and other key details. *Id.* ¶ 24.

In subsequent weeks, the Parties continued to negotiate the finer points of the Agreement, including the terms of the Releases, the Settlement Administrator and its respective duties, the Notice Program, and proposed schedule of post-settlement events. During this process, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, and the Notice Program, which was completed in May, 2023. *Id.* ¶ 25. The Agreement was executed on May 25, 2023. *See* Ex. 1. The Parties did not agree to attorneys' fees, costs, or Service Awards for Class Representatives until after an agreement had been reached as to the monetary and non-monetary relief to the Settlement Class. *Id.* ¶ 26.

## III.  MATERIAL TERMS OF THE SETTLEMENT

### A.  Settlement Class

Plaintiffs seek Preliminary Approval of the Settlement on behalf of the following Settlement Class:

> All persons and entities in the United States who during the Class Period purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of C&D, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Bare™ Products or Batiste™ Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

Agreement ¶ 76. The Settlement Class includes tens of thousands of members. Joint Decl. ¶ 30.

### B. Monetary & Non-Monetary Relief to the Settlement Class

#### 1. Monetary Relief

**a.** **Cash Settlement Fund -** The Settlement provides for a Cash Settlement Fund in the amount of $2,500,000.00. The Cash Settlement Fund shall be used to pay: (1) Cash Payments to Settlement Class Members who purchased Bare™ Products; (2) Service Awards to Class Representatives; (3) attorneys' fees and costs to Class Counsel; and (4) all Settlement Administration Costs. *Id.* ¶ 86(a).

**b.** **Voucher Settlement Program –** In addition to the Cash Settlement Fund, the Settlement also provides for a Voucher Settlement Program with $600,000.00 worth of Product Vouchers that may be used to compensate Settlement Class Members who purchased Batiste™ Products other than Bare™ Products. *Id.* ¶ 86(b).

**c.** **Claim Submission Process** – Each Settlement Class Member who timely submits a valid Claim Form shall be entitled to receive either a Cash Payment or Product Voucher, or both, on the following terms:

**i.** **Cash Payment** – to qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Form Deadline, including Proof of Purchase of a Bare™ Product or, if the Claimant does not have Proof of Purchase, the Claimant may attest under oath that he or

she purchased a Bare™ Product. *Id.* ¶ 86(c)(i).

    aa. <u>Cash Payment with Proof of Purchase</u>: If a Claimant includes Proof of Purchase with the Claim Form, the Claimant shall be entitled to a full refund of the purchase price for as many Bare™ Products for which Proof of Purchase is provided. *Id.* ¶ 86(c)(ii).

    bb. <u>Cash Payment without Proof of Purchase</u>: If the Claimant does not have Proof of Purchase, but attests to purchasing a Bare™ Product(s), the Claimant shall be entitled to $2.00 for each Bare™ Product purchased, for a maximum of 5 Bare™ Products, or $10.00. *Id.* ¶ 86(c)(iii).

    cc. There may be a *pro rata* increase or reduction to each Settlement Class Member's actual amount of their Cash Payment, depending upon the total amount of dollars calculated for Valid Claims in comparison to the Net Cash Settlement Fund.

    **ii.** **Product Voucher:** To qualify for a Product Voucher, a Claimant will be required to attest to purchasing a Batiste™ Product other than one of the Bare™ Products. Claimants entitled to a Product Voucher shall be entitled to Product Vouchers valued at $2.00 per product, for a maximum of 5 products or $10.00, in the form of a digital coupon that may be redeemed in store in multiple retail locations. Product Vouchers may be used for any Batiste™ Products, excluding the Bare™ Products.

Product Vouchers shall not be transferrable and shall expire one year from the date of issuance. The email or cover letter accompanying the Product Voucher and the Product Voucher provided to Settlement Class Members shall conspicuously state the Product Voucher's expiration date. *Id.* ¶ 86(d), (g). There may be a *pro rata* increase or reduction to each Settlement Class Member's actual amount of their Product Voucher, depending upon the total amount of dollars calculated for Valid Claims in comparison to the $600,000.00 worth of Product Vouchers in the Voucher Settlement Program.

### 2. Non-Monetary Relief

In addition to the monetary relief outlined above, C&D has also agreed to significant practice changes. For a period of at least 18 months, C&D commits to obtain written certification from its Supplier(s) that the Supplier(s) has tested tankers of propellant intended for use in the manufacture of Products for sale in the United States and that the Supplier(s) has confirmed that such tankers contain no more than 2 parts per million of benzene. If Supplier(s) finds benzene above 2 parts per million in a tanker of propellant, C&D shall not use propellant from such tanker in the manufacture of the Products intended for sale in the United States. *Id.* ¶ 87.

### C. Settlement Class Notice

The Parties have agreed upon a comprehensive Notice Program, which includes a Long Form Notice, Publication Notice, and Settlement Website. *Id.* ¶¶ 56, 57. All Settlement Administration Costs shall be payable out of the Cash Settlement Fund. *See id.* ¶ 75. The Notice Program will include a robust social media and digital plan, which, under the circumstances, is the best notice practicable. A detailed explanation of the Notice Program is found in the Declaration of Steven Weisbrot, Esq. of Angeion Group LLC re: the Proposed Notice Program ("Admin.

Decl."), attached as *Exhibit 3*. Additionally, Settlement Class members may request a Long Form Notice, review key documents and dates on the Settlement Website, and get answers to frequently asked questions by calling a toll-free telephone number. *Id.* ¶¶ 92(vi), 94-96.

The Notice, in forms substantially similar to the ones attached to the Agreement (Ex. 1) as Exhibits A and B, will inform the Settlement Class of the general terms of the Settlement, including a description of the Action, information regarding the identity of the Settlement Class, and what claims will be released. It shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Application for Attorneys' Fees, Costs and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Additionally, opt-out procedures will be explained, as well as how Settlement Class Members may exercise their right to object to the proposed Settlement at the Final Approval Hearing. *Id.* ¶¶ 94-96.

### D. Claims Process

To be entitled to receive a Cash Payment or a Product Voucher, Settlement Class Members must accurately and timely submit the Claim Form within 30 days following Final Approval. The Settlement Administrator will review all Claim Forms to determine their validity, eligibility, and the type and amount of Cash Payment and/or Voucher Payment to which the Settlement Class Member may be entitled. The Settlement Administrator will provide Valid Claimants with their Cash Payments and/or Voucher Payments no later than 75 days after Final Approval or 15 days after the Effective Date, whichever is later. Greater detail on the Claims process is found in Section IX of the Agreement. *See id.* § IX.

### E. Disposition of Residual Funds

Settlement Class Members receiving payment by check shall have 180 days to negotiate the check. Any funds remaining in the Cash Settlement Fund 20 days following the 180-day check negotiation period on account of uncashed or undeliverable checks shall be distributed to a *cy pres* recipient agreed to by the Parties and approved by the Court. *Id.* ¶ 116.

### F. Settlement Administrator

The proposed Settlement Administrator, a well-respected and reputable administrator, was mutually selected by the Parties. *See* Admin. Decl. ¶¶ 1-11; Joint Decl. ¶ 36. The Settlement Administrator shall effectuate the Notice Program, handle the Claims process, administer the Net Cash Settlement Fund and Voucher Settlement Program, and distribute the Cash Payments and Product Vouchers to Settlement Class Members. Agreement ¶ 91. The duties of the Settlement Administrator are as follows: (i) providing CAFA Notice; (ii) completing the Court-approved Notice Program by noticing the Settlement Class, sending out Long Form Notices upon Settlement Class member request, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Missing or Inaccurate Information, and sending Cash Payments and Product Vouchers to Settlement Class Members; (iii) establishing and maintaining the Cash Settlement Fund escrow bank account approved by the Parties; (iv) establishing and maintaining a post office box for opt-out requests from the Settlement Class and to receive Claim Forms; (v) establish and maintain the Settlement Website; (vi) establishing and maintaining an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and providing answers to the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries; (vii) responding to any mailed Settlement Class member inquiries; (viii) processing all opt-out requests from the Settlement Class; (ix) providing weekly

reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information; (x) in advance of the Final Approval Hearing, preparing a declaration to submit to the Court confirming that the Notice Program was completed in accordance with the terms of the Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the amount of valid Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval; (xi) distributing, out of the Net Cash Settlement Fund, Settlement Class Member Cash Payments by paper check, unless a Settlement Class Member elects to receive payment by electronic means; (xii) overseeing the administration and distribution of the Product Vouchers, including emailing Product Vouchers to Settlement Class Members who may qualify; (xiii) paying Court-approved attorneys' fees and costs, and Service Awards out of the Cash Settlement Fund; (xiv) paying Settlement Administration Costs out of the Cash Settlement Fund following approval by Settlement Class Counsel; and (xv) any other Settlement Administration function at the instruction of Settlement Class Counsel and C&D, including, but not limited to, verifying that the Cash Settlement Fund and Voucher Settlement Program have been properly administered and that the Cash Payments and Product Vouchers have been properly distributed. *Id.* ¶ 92. The Parties shall jointly oversee the Settlement Administrator. *Id.* ¶ 90. Settlement Administration Costs will be paid from the Cash Settlement Fund. *Id.* ¶¶ 75, 93.

10

### G. Opt-Out and Objection Procedures

Consistent with the Agreement's opt-out procedures, the Long Form Notice details that Settlement Class members who do not wish to participate in the Settlement may opt-out up to 30 days prior to the Final Approval Hearing. *Id.* ¶¶ 60, 95. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator that includes the Settlement Class member's name, address, telephone number, and email address (if any), and a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form. *Id.* ¶ 95.

The Agreement and Long Form Notice also specify how Settlement Class Members may object to the Settlement and/or the Application for Attorneys' Fees, Costs and Service Awards. Objections must be mailed to the Clerk of the Court, Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator.

For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. *Id.* ¶ 96. It must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or

current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient). Class Counsel and/or C&D may conduct limited discovery on any objector or objector's counsel. *Id.* ¶ 97.

### H.  Release of Claims

Plaintiffs and Settlement Class Members who do not timely and validly opt-out of the Settlement Class will be bound by the terms of the Settlement, including the Releases that discharge the Released Claims against the Released Parties. *See* Agreement § XII. The Released Claims are narrowly tailored and only "result from, arise out of, are based upon, or relate to (a) the alleged adulteration or contamination of any of the Bare™ Products or Batiste™ Products, including any alleged benzene adulteration or contamination, (b) any of the alleged violations of

laws or regulations cited in the Complaint or any alleged violations of any materially similar laws or regulations, (c) any of the advertising or marketing identified in the Complaint, including but not limited to the alleged failure to disclose the presence of benzene in the Bare™ Products or Batiste™ Products, (d) any testing alleged in the Complaint, (e) any acts, omissions, or misrepresentations that were raised or could have been raised within the scope of the facts asserted in the Complaint, including any claim that was or could be asserted under California's Proposition 65, or (f) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), (d), or (e) of [paragraph 117 of the Agreement]. *Id.* ¶ 117. Personal injury claims are not being released as part of the Settlement. *See id.* ¶ 70.

### I.  Attorneys' Fees, Costs, and Service Awards

The amount of any attorneys' fees, costs, or Service Awards shall be determined by the Court. As part of Plaintiffs' Motion for Final Approval, Class Counsel will submit its Application for Attorneys' Fees, Costs and Service Awards. Class Counsel intends to apply to the Court for an award of attorneys' fees of up to 33.33% of the Cash Settlement Fund, plus reimbursement of its litigation costs. Joint Decl. ¶ 33. In addition, Class Counsel intends to move for Service Awards of $2,500.00 for each Class Representative (for a total of $5,000.00). *Id.* ¶ 34. Class Counsel will formally request their attorneys' fees and costs and Service Award through a fee application that will be filed within the Motion for Final Approval no less than 45 days before the Final Approval Hearing. *Id.* ¶ 35.

The Settlement is not contingent on approval of the request for attorneys' fees and costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The Notices will

advise the Settlement Class of the amount of attorneys' fees and Service Awards that Class Counsel intends to seek. Agreement § X.

## IV. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS PRELIMINARY APPROVAL

The Settlement was negotiated at arm's length by competent, experienced counsel, with the assistance of a highly regarded mediator. Joint Decl. ¶ 28. It provides Settlement Class Members substantial monetary and injunctive relief in a prompt and efficient manner while at the same time mitigating the risk of protracted litigation and/or a negative outcome that would preclude any recovery whatsoever for the Settlement Class. *See id.* ¶¶ 45-46. The Settlement meets all the Seventh Circuit's standards for the approval of class action settlements, and therefore warrants Preliminary Approval.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2002); *Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). "In reviewing a proposed settlement the court should consider the judgment of counsel and the presence of good faith bargaining." *Patterson v. Stovall*, 528 F.2d 108, 114 (7th Cir. 1976), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). A "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 9230, 2014 WL 7011819, at *1 (N.D. Ill. Dec. 12, 2014) (internal citation and quotation marks omitted); *cf. Smith v. Sprint Commc'ns Co.*, 387 F.3d 612, 614 (7th Cir. 2004) ("The fact that a settlement has been reached is, of course, relevant.").

At the preliminary approval stage, the Court's task is to "determine whether the proposed

settlement is within the range of possible approval." *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (internal citation and quotation marks omitted) (at the final fairness hearing, the court will "adduce all information necessary to enable [it ] intelligently to rule on whether the proposed settlement is fair, reasonable, and adequate"), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). Courts in this district perform a "summary version" of the final fairness inquiry at the preliminary approval stage. *See, e.g.*, *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. 2010) ("*In re AT&T*") (quoting *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, Nos. 05 Civ. 5944, 07 Civ. 2439, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007)).

Accordingly, the Court's task on a motion for preliminary approval is "limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Isby*, 75 F.3d at 1196; *see also E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). In making these determinations, the court considers five factors: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, Nos. 07 CV 2898, 09 C 2026, 2012 WL 651727, at *2 (N.D. Ill. Feb. 28, 2012) (citation omitted). Each of these factors weighs in favor of approval of the Settlement and Preliminary Approval.

### A. The Settlement Amount is Substantial Given the Strengths of Plaintiffs' Claims and Attendant Risks (Factor 1)

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of the plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc.*, 463 F.3d at 653 (internal quotes and citations omitted). "Because the essence

of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. at 347 (citations omitted).

Notwithstanding that Plaintiffs believe their claims against C&D have merit, they are pragmatic and understand the legal uncertainties associated with continued litigation that pose substantial risk of non-recovery to the Settlement Class, especially in view of testing provided by C&D in connection with the mediation showing no detectable levels of benzene in the Batiste™ Products. *See* Joint Decl. ¶¶ 30, 42-43; *see In re Southwest Airlines Voucher Litig.*, No. 11-cv-8176, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval.").

Even if Plaintiffs survive a motion to dismiss and motion for summary judgment, C&D will oppose class certification. Denial of class certification would also result in no recovery at all for the Settlement Class. Plaintiffs maintain that C&D faces substantial risk, therefore warranting the recovery obtained in this Settlement. Plaintiffs also acknowledge that settling now reduces risks to themselves and the Settlement Class. *See* Joint Decl. ¶¶ 42-45.

### B. Further Litigation Would Be Complex, Costly, and Lengthy (Factor 2)

Preliminary approval is also favored because "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011). Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion to certify, motions for summary judgment, and *Daubert* motions. If Plaintiffs survive these early procedural hurdles and this litigation were to continue on the merits, it would be lengthy, expensive, and involve extensive motion practice, including a motion for class

certification (and possibly a motion for decertification), motions for summary judgment, and various pretrial motions, as well as extensive fact and expert discovery, including the preparation of expert reports, expert depositions, and *Daubert* motions. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex.").

Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class members. *See Schulte*, 805 F. Supp. 2d at 586. The immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820 (9th Cir. 2012) ("the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial"); *In re Netflix Privacy Litig.*, No. 5:11-cv-00379 EJD, 2013 WL 1120801, at *5 (N.D. Cal. Mar. 18, 2013) (determining that the settlement was fair, adequate, and reasonable when the calculation of the value of the case took into account the time value of money). Accordingly, the second factor weighs in favor of finding the Settlement fair, reasonable, and adequate.

### C. The Court Cannot Assess the Reaction of the Settlement Class Until After Notice Issues (Factor 3)

Notice regarding the Settlement has not yet been distributed. In the event any objections are received after the Notice is disseminated, they will be addressed in connection with Plaintiffs' Motion for Final Approval.

### D. Competent Counsel Endorse this Agreement (Factor 4)

Plaintiffs respectfully submit that they have retained counsel who are qualified, experienced, and fully capable of prosecuting this litigation on behalf of the Settlement Class. The

firms involved in this litigation have proven track records in the prosecution of complex class actions nationwide. *See* Joint Decl. ¶¶ 29, 38, and Exhibits A-F thereto. In assessing the qualifications of counsel under this factor, a court may rely upon affidavits submitted by class counsel as well as its own observations of class counsel during the litigation. *Isby*, 75 F.3d at 1200. Bringing this experience and knowledge to bear, Class Counsel believes that the Settlement is fair, reasonable, and adequate, and is in the best interests of the Settlement Class, especially since the Settlement achieves relief similar to what Plaintiffs could have obtained for tens of thousands of Settlement Class Members had they been successful at trial. Joint Decl. ¶¶ 31, 32, 40. *See McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### E. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 5)

The last factor concerns the stage of the proceedings and amount of discovery completed at the time the settlement is reached. *Synfuel*, 463 F.3d at 653. This factor "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07 C 2898, 2011 WL 3290302 (N.D. Ill. July 26, 2011) (quoting *Armstrong*, 616 F.2d at 325) (internal quotations omitted).

Plaintiffs and Class Counsel's knowledge of the merits as well as the strengths and weaknesses of Plaintiffs' claims is certainly adequate to support the Settlement here. Indeed, in connection with the mediation, the Parties exchanged significant information (including testing provided by C&D showing no detectable levels of benzene in the Batiste™ Products), which

18

allowed the Parties to assess the strengths of their positions and attack each other's potential weaknesses. During mediation, Judge Gold engaged in a critical analysis of the Parties' arguments. This discovery was sufficient for Class Counsel to appreciate the merits of the case before both negotiating and recommending settlement. Thus, this factor supports Preliminary Approval of the Settlement.

## V. CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Plaintiffs seek to certify the Settlement Class for settlement purposes. The Seventh Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. "Provisional settlement, class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, [and] ensuring notification of all class members of the terms of the proposed [s]ettlement [a]greement, and setting the date and time of the final approval hearing." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230(GF), 2014 WL 7011819, at \*2 (N.D. Ill. Dec. 12, 2014); *see also Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only.").

Under Rule 23(a), a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). As set forth below, Plaintiffs meet all the requirements.

### 1. Rule 23(a) is Satisfied

First, under Rule 23(a), the Court must determine whether it is likely to find that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Each requirement is satisfied here.

### a. The class is so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 643 (N.D. Ill. 2002) ("Although there is no 'bright line' test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)(1)."). Here, purchasers of the Products during the relevant time period are indisputably in the tens of thousands and are geographically located throughout the United States, making joinder impracticable. Joint Decl. ¶ 30. Thus, the numerosity requirement is easily met.

### b. There are questions of law and fact common to the class.

The commonality requirement is satisfied where, as here, there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To establish commonality, class members must have "suffered the same injury," and "[t]heir claims must depend upon a common contention." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (cleaned up); *Parker v. Risk Mgmt. Alternatives, Inc.*, 206 F.R.D. 211, 213 (N.D. Ill. 2002) ("[A] common nucleus of operative fact is usually enough to satisfy the [commonality] requirement."). Here, common questions include, but are not limited to, whether the Products contained benzene and C&D's failure to disclose that the Products allegedly contained benzene was likely to deceive reasonable consumers. Resolution of this common question would require evaluation of the question's merits under a single objective standard. *See Kitzes v. Home Depot, USA, Inc.*, 374 Ill. App. 3d 1053, 1061, 313 Ill.Dec. 293, 872 N.E.2d 53, 60-61 (2007).

### c. The claims of the representative parties are typical of the claims of the class.

Rule 23(a)(3), the typicality requirement, is satisfied when a plaintiff shows that the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members. *Parker*, 206 F.R.D. at 213 ("Typicality is satisfied if a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to the claim of the other class members, and if the claims are based on the same legal theory."). Here, Plaintiffs' claims, legal theories, and evidence are identical to those of other members of the Settlement Class. Plaintiffs, like all members of the Settlement Class, purchased the Products during the Class Period and suffered damages because of C&D's alleged material misstatements and omissions. Accordingly, the Rule 23(a)(3) typicality requirement is satisfied.

### d. The representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This prerequisite of Rule 23(a) has two components: (1) "the representatives must not possess interests which are antagonistic to the interests of the class," and (2) "the representatives' counsel must be qualified, experienced and generally able to conduct the proposed litigation." *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F. Supp. 3d 1076, 1085 (N.D. Ill. 2021) (quoting *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 698 (S.D. Fla. 1992)); *see also Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir. 1993).

Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all members of the Settlement Class, Plaintiffs have claims against C&D in connection with their purchase of Products during the Class Period. Plaintiffs, like all members of the Settlement Class, were also allegedly injured by C&D's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class

as a whole. Thus, Plaintiffs and the Settlement Class they seek to represent have the same interests in recovering damages allegedly caused by C&D's wrongful conduct. Likewise, Class Counsel are highly qualified and have a great deal of experience litigating consumer class actions. *See* Joint Decl., Ex. A-F; *see also* § VI, *infra*. Accordingly, Class Counsel will also adequately protect the Settlement Class.

### 2. Rule 23(b)(3) is Satisfied

Rule 23(b)(3) requires the court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at (b)(3). District courts have broad discretion in making class certification decisions. *In re AT&T*, 270 F.R.D. at 340.

Factors particularly pertinent to these issues here "include: (A) the class members' interests in individually controlling the prosecution ... of separate actions" and "(B) the extent and nature of any litigation concerning the controversy already begun." *See id.* These prerequisites are satisfied here. Further, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem*, *Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### a. Common questions predominate.

Here, Plaintiffs' claims involve common questions of law and fact because the same set of operative facts applies to the Settlement Class. Specifically, common questions include whether the Products contained benzene and whether C&D omitted or failed to disclose material information to Plaintiffs and the Settlement Class regarding the alleged benzene and whether the Settlement Class was harmed. Accordingly, whether C&D engaged in unfair or deceptive

22

practices will entail common proof. In *Basic v. Levinson*, 485 U.S. 224 (1988), the Supreme Court dispensed with the requirement that each settlement class member prove individual reliance on a defendant's alleged misstatements and/or omissions. Thus, the "predominance" requirement is satisfied.

### b. Class treatment of Plaintiffs' claims is superior.

The requirement of superiority also is met because, given the relatively modest amounts that Settlement Class members would stand to recover in individual actions, it is improbable that many "would possess the initiative to litigate individually." *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974); *cf. Amchem*, 521 U.S. at 617, 117 S.Ct. 2231 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (cleaned up)). A class action is the superior method for the fair and efficient adjudication of these claims. Plaintiffs' claims are shared by tens of thousands of consumers nationwide, and resolution of all Settlement Class Members' claims in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, it is unlikely that any Settlement Class member would be willing or able to pursue relief on an individual basis.

## VI. PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Rule 23(g), which governs the standards and framework for appointing class counsel for a certified class, sets forth four criteria the district court must consider in evaluating the adequacy of proposed counsel: (1) "the work counsel has done in identifying or investigating potential claims

in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class[.]" Fed. R. Civ. P. 23(g)(1)(B). The Advisory Committee has noted that "[n]o single factor should necessarily be determinative in a given case." Fed. R. Civ. P. 23(g) advisory committee's note.

Here, Plaintiffs and the Settlement Class are represented by qualified and competent Class Counsel. Each firm is a leader in the class action field, and each attorney has extensive experience prosecuting and resolving complex class actions. Before commencing litigation, Class Counsel investigated the potential claims against C&D, interviewed potential plaintiffs, and gathered information regarding the alleged presence of benzene in C&D's Products. Joint Decl. ¶ 3. Class Counsel has devoted substantial time and resources to benzene litigation and will continue to do so. *Id.* ¶¶ 38-39.

## VII. THE NOTICE PROGRAM CONTAINS THE BEST NOTICE PRACTICABLE

If the Court finds that it will likely be able to certify the Settlement Class and that the proposed Settlement is within the range of possible approval, the Court must then direct the Plaintiffs to provide notice "in a reasonable manner to all class members who would be bound" by the proposed settlement agreement. Fed. R. Civ. P. 23(e)(1). For any Rule 23(b)(3) class proposed to be certified for purposes of a settlement under Rule 23(e), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). This notice requirement "is designed to guaranty that those bound by the ruling in a class action were accorded their due process rights to notice and an opportunity to be heard." *Chaffee v. A&P Tea*

*Co.*, Nos. 79 C 2735 and 79 C 3625, 1991 WL 5859, at *2 (N.D. Ill. Jan. 16, 1991).

The Notice Program satisfies the foregoing criteria. It includes a Long Form Notice, Publication Notice, Settlement Website, and toll-free telephone number, and shall provide, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Application for attorneys' fees, costs and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Joint Decl. ¶ 37; Agreement ¶¶ 94-96. The Notice Program is designed to directly reach a very high percentage of Settlement Class members through the Publication Notice, which will be published in digital media to be agreed upon by the Parties and the Settlement Administrator. *Id.* ¶ 86; *see* Admin. Decl. ¶¶ 12-15. Thus, the Court should approve the Notice Program, including the form and content of the Notices. *See* Agreement at Ex. A, B.

## VIII.  PROPOSED SCHEDULE OF POST-SETTLEMENT EVENTS

Plaintiffs respectfully propose the following schedule for the Court's review and approval, which summarizes the deadlines in the Preliminary Approval Order. If the Court agrees with the proposed schedule, Plaintiffs request that the Court schedule the Final Approval Hearing for October 16, 2023, or such later date available on the Court's calendar.

| Deadline to complete Notice Program | *At least 60 days before Final Approval Hearing* |
|---|---|
| Deadline for filing Motion for Final Approval, including Class Counsel's Application for Attorneys' Fees, Costs and Service Awards | *45 days before Final Approval Hearing* |

| Opt-out Period Ends | *30 days before Final Approval Hearing* |
|---|---|
| Objection Period Ends | *30 days before Final Approval Hearing* |
| Final Approval Hearing | *October 16, 2023 at ____ a.m./p.m., or such later date available on the Court's calendar* |
| Claim Form Deadline | *30 days after Final Approval* |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court:

**1.**    Preliminarily approve the Settlement;

**2.**    Certify the Settlement Class for settlement purposes;

**3.**    Approve the Notice Program, including the Opt-Out and Objection procedures;

**4.**    Approve the Claims process;

**5.**    Appoint Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz Ostrow P.A., Nick Suciu III and Erin J. Ruben of Milberg Coleman Bryson Phillips Grossman, PLLC; Sarah N. Westcot and Max S. Roberts of Bursor & Fisher, P.A.; R. Jason Richards of Aylstock, Witkin, Kreis & Overholtz; Paul K. Joseph of Fitzgerald Joseph LLP; and Kevin Laukaitis of Laukaitis Law LLC as Class Counsel;

**6.**    Appoint Angeion Group as the Settlement Administrator; and

**7.**    Enter the proposed Preliminary Approval Order attached hereto as ***Exhibit 4***.

Dated: May 25, 2023                    Respectfully submitted,

By: */s/ Jeff Ostrow*
      Jeff Ostrow

**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow
Kristen Lake Cardoso
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Fax: (954) 525-4300
E-mail: ostrow@kolawyers.com
       cardoso@kolawyers.com

**BURSOR & FISHER, P.A.**
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Fax: (212) 989-9189
E-mail: mroberts@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
Stephen A. Beck**
Jonathan L. Wolloch**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Telephone: (305) 330-5512
Fax: (305) 676-9006
E-mail: swestcot@bursor.com
       sbeck@bursor.com
       jwolloch@bursor.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Gary M. Klinger
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
E-mail: gklinger@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Nick Suciu III
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Telephone: (313) 303-3472
E-mail: nsuciu@milberg.com

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
Erin J. Ruben
800 S. Gay Street, Suite 1100
Knoxville, Tennessee 37929
Telephone: (919) 600-5000
E-mail: eruben@milberg.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson Blvd., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Fax: (212) 686-0114
E-mail: malmstrom@whafh.com

*Admitted Pro Hac Vice*
*\*\*Pro Hac Vice forthcoming*

*Attorneys for the Settlement Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 25, 2023, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this case.

*/s/ Jeff Ostrow*

28