# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
CASE NO. 22-cv-6301-KENDALL

EMILY EVANS and CAITLIN HASSETT,
on behalf of themselves and all others
similarly situated,

     Plaintiffs,

vs.

CHURCH & DWIGHT CO., INC.,

     Defendant.

_____ /

## **SETTLEMENT AGREEMENT AND RELEASES**

   This Settlement Agreement ("Settlement" or "Agreement"),[1] dated as of May 24, 2023, is

entered into between Plaintiffs, Emily Evans and Caitlin Hassett, on behalf of themselves and the

Settlement Class on the one hand, and Defendant, Church & Dwight Co., Inc. on the other hand.

The Parties hereby agree to the following terms in full settlement of the Action, subject to a Final

Approval Order entered by the Court.

  **I.**  **Procedural History**

   1.   On October 31, 2022, Valisure submitted a Citizens Petition to the Food and Drug

Administration, alleging that it tested several brands and batches of dry shampoo products and

allegedly found that many contained harmful levels of the alleged carcinogen benzene, and

requested governmental intervention and action.

   2.   C&D was one of the manufacturers whose products were tested and allegedly found

to contain harmful levels of benzene. As a result, C&D was named a defendant in a number of

---

[1] All capitalized terms herein shall have the same meanings as those ascribed to them in Section II
below or as defined elsewhere in the Agreement.

lawsuits arising from its manufacture, distribution, and sale of allegedly contaminated dry shampoo products. C&D at all times disputed the allegations in all threatened and filed lawsuits.

3.      On November 2, 2022, Sofia Goldgewicht filed a lawsuit against C&D in the United States District Court for the Southern District of Florida. *See Goldgewicht v. Church & Dwight Co., Inc.*, No. 1:22-cv-23585 (S.D. Fla.).

4.      On November 8, 2022, Eden Amadril and Ariana Skurauskis filed a lawsuit against C&D in the United States District Court for the Northern District of California. *See Amadril, et al. v. Church & Dwight Co., Inc.*, No. 5:22-cv-07010 (N.D. Cal.).

5.      On November 10, 2022, Plaintiff, Emily Evans, filed this Action in the United States District Court for the Northern District of Illinois. *See Evans v. Church & Dwight Co., Inc.*, No. 1:22-cv-06301 (N.D. Ill.).

6.      On November 14, 2022, Ann Grieb filed a lawsuit against C&D in the United States District Court for the Southern District of California. *See Grieb v. Church & Dwight, Inc.*, No. 3:22-cv-01778 (S.D. Cal.).

7.      On November 22, 2022, Crystal Zurba filed a lawsuit against C&D in the United States District Court for the Central District of California. *See Zurba v. Church & Dwight Co., Inc.*, No. 8:22-cv-02121 (C.D. Cal).

8.      On December 14, 2022, Ms. Amadril and Ms. Skurauskis voluntarily dismissed their action without prejudice.

9.      On or about December 19, 2022, C&D filed a motion with the Joint Panel for Multidistrict Litigation ("JPML"), requesting to centralize the foregoing actions (and any future "tag-along" actions) for coordinated pretrial discovery and proceedings in a multidistrict litigation ("MDL") pursuant to 28 U.S.C. § 1407 ("MDL Motion"). C&D also filed a motion for extension

of time to file an answer to the Complaint in this Action and for a stay of remaining case deadlines pending a decision by the JPML on the MDL Motion (which the Court granted on December 20, 2022).

10.     Class Counsel represent that as a result of the MDL Motion, they conferred with each other, ultimately deciding that it was in the best interest of the plaintiffs, putative class members, and the Court, to work collaboratively and collectively and to pursue their claims in a single action in the Northern District of Illinois.

11.     On December 19, 2022, Ms. Goldgewicht voluntarily dismissed her action without prejudice.

12.     On December 21, 2022, Ms. Grieb voluntarily dismissed her action without prejudice.

13.     On December 30, 2022, Plaintiff, Caitlin Hassett, filed a lawsuit against C&D in the United States District Court for the Northern District of Illinois. *See Hassett v. Church & Dwight Co., Inc.*, No. 1:22-cv-07348 (N.D. Ill.).

14.     On January 4, 2023, Ms. Zurba voluntarily dismissed her action without prejudice.

15.     On or about January 17, 2023, the JPML entered an Order Deeming the MDL Motion Moot, since only two actions concerning benzene-contaminated dry shampoo (*i.e.*, *Evans* and *Hassett*) remained pending against C&D, both in the Northern District of Illinois.

16.     On January 31, 2023, Plaintiff Hassett voluntarily dismissed her action without prejudice.

17.     On February 1, 2023, Plaintiffs, Evans and Hassett, filed their First Amended Class Action Complaint in this Action, asserting claims on behalf of themselves and a nationwide class, an Illinois subclass, and a consumer fraud multi-state subclass against C&D for violation of the

Illinois Consumer Fraud and Deceptive Trade Practices Act (815 ILCS 505/1, *et seq.*) ("IFCA"), fraud, unjust enrichment, and violation of state consumer fraud acts.

18.     The Parties met and conferred for a Rule 26(f) conference and filed their Joint Initial Status Report on February 7, 2022.

19.     On February 10, 2023, the Parties attended a status hearing before the Honorable Virginia M. Kendall, at which time Judge Kendall ordered a briefing schedule for C&D's anticipated motion to dismiss and stayed discovery pending a ruling on the motion to dismiss.

20.     C&D filed its Motion to Dismiss ("MTD") on February 15, 2023.

21.     On March 8, 2023, Plaintiffs filed their Opposition to C&D's MTD.

22.     On March 16, 2023, Plaintiffs filed a Notice of Supplemental Authority in support of their Opposition to the MTD.

23.     On March 22, 2023, C&D filed its Reply in support of its MTD.

24.     On April 4, 2023, C&D filed a Notice of Supplemental Authority in support of its MTD.

25.     On April 10, 2023, the Parties participated in a full day private mediation before Magistrate Judge Steven M. Gold (ret.) in New York. In advance of the mediation, C&D provided Class Counsel with laboratory testing allegedly showing no detectable levels of benzene, sales data and other related information.  The mediation concluded with the Parties agreeing to the material terms of a settlement that would resolve Plaintiffs' claims and those of the putative class.

26.     Plaintiffs filed a Joint Notice of Settlement with the Court on April 11, 2023.

27.     The Parties now agree to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties. C&D has entered into this Agreement to resolve all controversies and disputes arising out of or relating to

the allegations made in the Complaint, and to avoid the litigation costs and expenses, distractions, burden, expense, and disruption to its business operations associated with further litigation. C&D does not in any way acknowledge, admit to, or concede any of the allegations made in the Complaint (and all previous complaints filed by Class Counsel) or the Citizens Petition, and expressly disclaims and denies any fault or liability, or any charges of wrongdoing that have been or could have been asserted in the Complaint. Nothing contained in this Agreement shall be used or construed as an admission of liability, and this Agreement shall not be offered or received in evidence in any action or proceeding in any court or other forum as an admission or concession of liability or wrongdoing of any nature or for any other purpose other than to enforce the terms of this Agreement. Plaintiffs have entered into this Agreement to recover on the claims asserted in the Complaint, and to avoid the risk, delay, and uncertainty of continued litigation. Plaintiffs do not in any way concede the claims alleged in the Action lack merit or are subject to any defenses. The Parties intend this Agreement to bind Plaintiffs, C&D, and all Settlement Class Members.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt and sufficiency of which is hereby mutually acknowledged, the Parties agree, subject to approval by the Court, as follows.

## II.     Definitions

29.     "Action" means the lawsuit entitled *Evans, et al. v. Church & Dwight Co., Inc.*, No. 1:22-cv-06301 (N.D. Ill.).

30.     "Application for Attorneys' Fees, Costs and Service Awards" means the application made with the Motion for Final Approval seeking Class Counsel's attorneys' fees, reimbursement for costs, and for Service Awards for the Class Representatives.

31.     "Bare™ Product(s)" means Batiste's™ Bare™ and Clean & Light Bare™ dry

shampoo products manufactured, distributed, marketed, offered for sale, or sold by C&D.

32. "Batiste™ Product(s)" means all Batiste-branded dry shampoo products manufactured, distributed, marketed, offered for sale, or sold by C&D.

33. "CAFA Notice" means the Class Action Fairness notice which the Settlement Administrator shall serve upon the appropriate state and federal officials, providing notice of the proposed settlement. The Settlement Administrator shall provide a declaration attesting to compliance with 28 U.S.C. § 1715(b), which will be filed with the Motion for Final Approval.

34. "Cash Payment" means the cash payment out of the Net Cash Settlement Fund to which Settlement Class Members who have purchased Bare™ Products and have submitted a Valid Claim are entitled as a benefit under this Settlement.

35. "Cash Settlement Fund" means the $2,500,000.00 cash fund that C&D is obligated to pay under the terms of the Settlement.

36. "Claim" means the submission of a Claim Form by a Claimant.

37. "Claim Form" means the proof of claim, substantially in the form attached hereto as ***Exhibit C***, which may be modified, subject to the Parties' approval, to meet the requirements of the Settlement Administrator, and pursuant to which Settlement Class members may apply for either a Cash Payment or Product Voucher.

38. "Claim Form Deadline" shall be 30 days after the date of Final Approval and is the last day by which a Claim Form may be submitted to the Settlement Administrator for a Settlement Class member to be eligible for a Cash Payment or a Product Voucher.

39. "Claimant" means a Settlement Class Member who submits a Claim Form seeking a Cash Payment or Product Voucher under this Settlement.

40. "Class Counsel" means: Jeff Ostrow and Kristen Lake Cardoso of Kopelowitz

Ostrow P.A., Nick Suciu III and Erin J. Ruben of Milberg Coleman Bryson Phillips Grossman, PLLC, Sarah N. Westcot and Max S. Roberts of Bursor & Fisher, P.A., R. Jason Richards of Aylstock, Witkin, Kreis & Overholtz, Paul K. Joseph of Fitzgerald Joseph LLP, Kevin Laukaitis of Laukaitis Law LLC, and any other law firms appointed by the Court as such.

41. "Class Period" means the period up to and including the date of Preliminary Approval.

42. "Class Representatives" means Emily Evans and Caitlin Hassett.

43. "Complaint" means the First Amended Class Action Complaint filed in the Action on February 1, 2023.

44. "Court" means the United States District Court for the Northern District of Illinois and the Judge(s) assigned to the Action.

45. "C&D" means Defendant, Church & Dwight Co., Inc.

46. "Defendant" means Church & Dwight Co., Inc.

47. "Defendant's Counsel" or "C&D's Counsel" means Proskauer Rose LLP.

48. "Effective Date" means 5 days after the entry of the Final Approval Order, provided no objections are made to the Settlement. If there are objections to the Settlement, then the Effective Date shall be the later of: (a) 30 days after entry of the Final Approval Order if no appeals are taken from the Final Approval Order; or (b) if appeals are taken from the Final Approval Order, then the earlier of 30 days after the last appellate court ruling affirming the Final Approval Order or 30 days after the entry of a dismissal of the appeal.

49. "Final Approval" means the final approval of the Settlement, which occurs when the Court enters the Final Approval Order, substantially in the form attached to the Motion for Final Approval.

50. "Final Approval Hearing" means the hearing held before the Court during which the Court will consider granting Final Approval of the Settlement and to further determine the amounts of attorneys' fees and costs to be awarded to Class Counsel and the amount of Service Awards to the Class Representatives.

51. "Final Approval Order" means the final order that the Court enters granting Final Approval of the Settlement. The proposed Final Approval Order shall be in a form agreed upon by the Parties and shall be substantially in the form attached as an exhibit to the Motion for Final Approval. Final Approval Order also includes the orders, which may be entered separately, determining the amount of attorneys' fees and costs awarded to Class Counsel and the amount of any Service Awards to the Class Representatives.

52. "Long Form Notice" means the long form notice of the Settlement, substantially in the form attached hereto as ***Exhibit B***, that shall be posted on the Settlement Website and shall be available to Settlement Class members by mail on request made to the Settlement Administrator.

53. "Motion for Final Approval" means the motion that Plaintiffs and Class Counsel will file with the Court seeking Final Approval of the Settlement. The Motion for Final Approval will include the Application for Attorneys' Fees, Costs and Service Awards and will be filed with the Court no less than 45 days before the Final Approval Hearing.

54. "Motion for Preliminary Approval" means the motion that Plaintiffs and Class Counsel will file with the court seeking a Preliminary Approval of the Settlement.

55. "Net Cash Settlement Fund" means the Cash Settlement Fund, minus any Court-approved attorneys' fees, costs, Service Awards, and Settlement Administration Costs.

56. "Notice" means the Long Form Notice and Publication Notice that Plaintiffs and

Class Counsel will ask the Court to approve in connection with the Motion for Preliminary Approval.

57.     "Notice Program" means the methods provided for in this Agreement for giving Notice and consists of the Long Form Notice and Publication Notice.

58.     "Notice of Missing or Inaccurate Information" means the notice sent by the Settlement Administrator to a Settlement Class Member who has submitted a Claim Form with inaccurate, disqualifying, incomplete, or missing information that is required for the Settlement Class Member to be considered eligible for a Cash Payment or Product Voucher provided by this Settlement.

59.     "Objection Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

60.     "Opt-Out Period" means the period that begins the day after the earliest day on which the Notice is first distributed, and that ends no later than 30 days before the Final Approval Hearing.

61.     "Party" means each of the Plaintiffs and Defendant, and "Parties" means Plaintiffs and Defendant collectively.

62.     "Plaintiffs" means Emily Evans and Caitlin Hassett.

63.     "Preliminary Approval" means the preliminary approval of the Settlement, which occurs when the Court enters the Preliminary Approval Order, substantially in the form attached to the Motion for Preliminary Approval.

64.     "Preliminary Approval Order" means the order preliminarily approving the Settlement and proposed Notice Program.

65.     "Products" means all Batiste™ Products.

66.     "Product Voucher" means the consideration under this Settlement available to Settlement Class Members who purchased Batiste™ Products other than Bare™ Products. The Product Voucher shall be substantially in the form attached as ***Exhibit D***.

67.     "Proof of Purchase" means evidence of purchase of a Bare™ Product, such as a store receipt.

68.     "Publication Notice" means the Notice that will be published in digital media to be agreed upon by the Parties and the Settlement Administrator.  The Publication Notice shall be substantially in the form attached as ***Exhibit A***.

69.     "Releases" means the releases and waiver set forth in Section XII of this Agreement.

70.     "Released Claims" means the claims described in Section XII of this Agreement. The Released Claims exclude personal injury claims.

71.     "Released Parties" means C&D, and its present and former parents, subsidiaries, divisions, departments, affiliates, predecessors, successors and assigns, and any and all of their past, present, and future directors, officers, executives, officials, principals, employees, stockholders, heirs, agents, servants, insurers, reinsurers, members, attorneys, accountants, actuaries, fiduciaries, advisors, consultants, representatives, partners, joint venturers, licensees, licensors, independent contractors, manufacturers, suppliers, wholesalers, resellers, distributors, retailers, subrogees, trustees, executors, administrators, predecessors, successors and assigns, and any other person acting on C&D's behalf, in their capacity as such.  It is expressly understood that to the extent a Released Party is not a party to the Agreement all such Released Parties are intended third-party beneficiaries of the Agreement.

72.     "Releasing Parties" means (i) Plaintiffs and all Settlement Class Members, (ii) each of their respective executors, representatives, heirs, predecessors, assigns, beneficiaries, affiliates, successors, bankruptcy trustees, guardians, joint tenants, tenants in common, tenants by the entireties, agents, attorneys, (iii) any entities in which a Plaintiff and/or other participating Settlement Class Member has or had a controlling interest or that has or had a controlling interest in him, her, or it, (iv) any other person or entity (including any governmental entity) claiming by or through, on behalf of, for the benefit of, derivatively for, or as representative of a Plaintiff and/or any other Settlement Class Member, and all those who claim through them or on their behalf, and (v) the respective past and present directors, governors, executive-committee members, officers, officials, employees, members, partners, principals, agents, attorneys, advisors, trustees, administrators, fiduciaries, consultants, service providers, representatives, successors in interest, assigns, beneficiaries, heirs, executors, accountants, accounting advisors, and auditors of any or all of the above persons or entities identified in (i)-(iv).

73.     "Service Award" means the payment that the Court awards the Plaintiffs for serving as Class Representatives. The Service Award shall be paid out of the Cash Settlement Fund.

74.     "Settlement Administrator" means the Angeion Group.

75.     "Settlement Administration Costs" means all costs and fees of the Settlement Administrator regarding Notice and settlement administration. All Settlement Administration Costs shall be paid out of the Cash Settlement Fund.

76.     "Settlement Class" means all persons and entities in the United States who during the Class Period purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale.  Excluded from the Settlement Class are (a) all persons

who are employees, directors, officers, and agents of C&D, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Bare™ Products or Batiste™ Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

77.     "Settlement Class Counsel" means Jeff Ostrow, Nick Suciu III, and Sarah N. Westcot.

78.     "Settlement Class Member" means any member of the Settlement Class who has not opted-out of the Settlement.

79.     "Settlement Class member" means a member of the Settlement Class.

80.     "Settlement Website" means the website the Settlement Administrator will establish as a means for the Settlement Class members to submit Claim Forms and obtain notice and information about the settlement, including hyperlinked access to this Agreement, the Long Form Notice, Preliminary Approval Order, Claim Form, Motion for Final Approval, and Final Approval Order, as well as other documents as the Parties agree to post or the Court orders posted. The Settlement Website shall remain online and operable for six months after Final Approval.

81.     "Supplier" means any entity that supplies to C&D propellant intended for use in the manufacture of Bare™ Products or Batiste™ Products for sale in the United States.

82.     "Unit" means a single Product.

83.     "Valid Claim" means a Claim Form submitted by a Settlement Class Member that is: (a) submitted in accordance with the directions accompanying the Claim Form and the provisions of the Settlement; (b) accurately, fully and truthfully completed and executed, with all of the information requested in the Claim Form, by a Settlement Class Member; (c) signed physically or by e-signature by a Settlement Class Member personally, subject to the penalty of

perjury; (d) returned via mail and postmarked by the Claim Form Deadline, or, if submitted online, submitted by 11:59 p.m. Eastern time on the Claim Form Deadline; and (e) determined to be valid by the Settlement Administrator. The Settlement Administrator may require additional information from the Claimant to validate the Claim, including, but not limited to, answers related to questions regarding the validity or legitimacy of the physical or e-signature. Failure to respond to the Settlement Administrator's Notice of Missing or Inaccurate Information for additional information may result in a determination that the Claim is not a Valid Claim.

84.      "Voucher Settlement Program" means the voucher program to be paid for by C&D, and administered by the Settlement Administrator, which consists of $600,000.00 worth of Product Vouchers.  All costs of administering the Voucher Settlement Program shall be Settlement Administration Costs to be paid out of the Cash Settlement Fund.

### III.      Certification of the Settlement Class

85.      Plaintiffs shall propose and recommend to the Court that the Settlement Class be certified for Settlement purposes. C&D agrees solely for purposes of the Settlement provided for in this Agreement, and the implementation of such Settlement, that this case shall proceed as a class action; provided however, that if a Final Approval Order is not issued, then any certification shall be null and void and, for the avoidance of doubt, C&D shall retain all rights to object to any future requests to certify a class.  Plaintiffs and Class Counsel shall not reference this Agreement in support of any subsequent motion for class certification of any class in the Action.

### IV.      Settlement Consideration

86.      **Monetary Relief and Product Vouchers**

a.      *Cash Settlement Fund in the amount of $2,500,000.00* – The Cash Settlement Fund shall be used to pay: (1) Cash Payments to Settlement Class Members

who purchased Bare™ Products; (2) Service Awards to Class Representatives; (3) attorneys' fees and costs awarded by the Court to Class Counsel; and (4) all Settlement Administration Costs, including costs of administering the Cash Payments and Voucher Settlement Program; and

b.      *Voucher Settlement Program in the amount of $600,000.00 worth of Products Vouchers* – The Voucher Settlement Program shall be used to compensate Settlement Class Members who purchased any of the Batiste™ Products *other than* Bare™ Products by giving them Product Vouchers. Product Vouchers may be redeemed in store in multiple retail locations.

c.      Cash Payments shall be made out of the Net Cash Settlement Fund to all Settlement Class Members who submit a Valid Claim entitling them to a Cash Payment.

i.   To qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Form Deadline, including proof of purchase of a Bare™ Product, or if the Claimant does not have Proof of Purchase, the Claimant may attest under oath that he or she purchased a Bare™ Product(s).

ii.  If a Claimant includes Proof of Purchase with the Claim Form, the Claimant will be entitled to a full refund of the purchase price for as many Bare™ Products for which Proof of Purchase is provided.

iii. If the Claimant does not include Proof of Purchase, but does attest to purchasing a Bare™ Product(s), the Claimant shall be entitled to $2.00 for each Bare™ Product purchased, for a maximum of 5 Bare™ Products, or $10.00.

      d.     The amount of each Settlement Class Member's actual final Cash Payment from the Net Cash Settlement Fund will be determined once all Valid Claims for Cash Payments are approved. There may be a pro rata increase or reduction to each Settlement Class Member's amount of their Cash Payment, depending upon the total amount of dollars calculated for Valid Claims in comparison to the Net Cash Settlement Fund.

      e.     The Settlement Administrator shall issue Product Vouchers as part of the Voucher Settlement Program to all Settlement Class Members who submit a Valid Claim entitling them to a Product Voucher. To qualify for a Product Voucher, a Claimant will be required to attest to purchasing one of the Batiste™ Products other than one of the Bare™ Products. Claimants entitled to a Product Voucher shall be entitled to Vouchers valued at $2.00 per product, for a maximum of 5 products or up to $10.00. Product Vouchers may be used for any Batiste™ Products, excluding the Bare™ Products.

      f.     The total dollar value equivalent of the Product Voucher that each Settlement Class Member shall receive will be determined once all Valid Claims for Product Vouchers are approved. There may be a *pro rata* increase or reduction to each Settlement Class Member's amount of their Product Voucher, depending upon the total amount of dollars calculated for Valid Claims in comparison to the $600,000.00 worth of Product Vouchers in the Voucher Settlement Program.

      g.     Product Vouchers shall not be transferrable and shall expire after one year from the date of issuance. The email or cover letter accompanying the Product Voucher and the Product Voucher provided to Settlement Class Members pursuant to the terms of this Settlement shall conspicuously state the Voucher's expiration date.

h.      For avoidance of doubt, a Settlement Class Member may be entitled to both a Cash Payment and a Product Voucher.

i.      Other than the Cash Settlement Fund and the Voucher Settlement Program, C&D shall not be required to make any other payments or distribute any other Product Vouchers as part of this Settlement.

j.      Within 10 days following Preliminary Approval, C&D shall transfer $2,500,000.00 to a Cash Settlement Fund escrow bank account established by the Settlement Administrator and approved by the Parties.

k.      The Cash Settlement Fund at all times will be deemed a "qualified settlement fund" within the meaning of United States Treasury Reg. § 1.468B-1. All taxes (including any estimated taxes, and any interest or penalties relating to them) arising with respect to the income earned by the Cash Settlement Fund or otherwise, including any taxes or tax detriments that may be imposed upon Defendant with respect to income earned by the Cash Settlement Fund for any period during which the Cash Settlement Fund does not qualify as a "qualified settlement fund" for the purpose of federal or state income taxes or otherwise (collectively "Taxes"), will be paid out of the Cash Settlement Fund. C&D and its counsel, and Plaintiffs and Class Counsel, will have no liability or responsibility for any of the Taxes. The Cash Settlement Fund will indemnify and hold harmless C&D and its counsel, and Plaintiff and Class Counsel, for all Taxes (including, without limitation, Taxes payable by reason of any such indemnification).

**Non-Monetary Relief**

87.     For a period of at least 18 months ("Certification Period") Defendant shall require its Supplier(s) to provide Defendant with written certification that it has tested tankers of propellant

16

intended for use in the manufacture of Products for sale in the United States and that it has confirmed that such tankers contain no more than 2 parts per million ("ppm") of benzene ("Certification"). In the event Supplier finds benzene above 2 ppm in a tanker of propellant, C&D shall not use propellant from such tanker in the manufacture of the Products intended for sale in the United States. In the event that the FDA imposes binding requirements limiting benzene in dry shampoo products in the future, C&D shall comply with those requirements and such compliance shall supersede the requirements of this paragraph. The obligation to begin the Certification Period shall not arise until 30 days following the date of Preliminary Approval, provided that C&D may elect to begin the Certification Period earlier. Prior to the start of the Certification Period, C&D shall be permitted to continue to manufacture and sell the Products in the normal course of business, regardless of whether it has received Certification from its Supplier(s). Moreover, C&D shall be permitted to sell all inventory already manufactured even after the Certification Period begins. If Class Counsel on behalf of the Settlement Class Members believes C&D is in breach of any of the non-monetary relief provisions set forth in this section, Class Counsel shall be obligated to give C&D reasonable notice and a reasonable opportunity to cure following a "meet and confer" conference before seeking to enforce the non-monetary relief in the Court, which shall have continuing jurisdiction to enforce this subparagraph following Final Approval.

## V.     **Settlement Approval**

88.     Upon execution of this Agreement by all Parties and Settlement Class Counsel, Settlement Class Counsel shall file a Motion for Preliminary Approval. The proposed Preliminary Approval Order shall be attached to the motion as an exhibit and shall be in a form agreed to by Settlement Class Counsel and C&D.

89.     The Motion for Preliminary Approval shall, among other things, request that the

Court: (1) preliminarily approve the terms of the Settlement as being within the range of fair, adequate, and reasonable; (2) provisionally certify the Settlement Class for settlement purposes only; (3) approve the Notice Program set forth herein and approve the form and content of the Notices of the Settlement; (4) approve the Claim Form submission process; (5) approve the procedures set forth herein for Settlement Class members to opt-out of the Settlement or for Settlement Class Members to object to the Settlement; (6) stay the Action pending Final Approval of the Settlement; and (7) schedule a Final Approval Hearing for a time and date mutually convenient for the Court, Settlement Class Counsel, and C&D's Counsel, at which the Court will conduct an inquiry into the fairness of the Settlement, determine whether it was made in good faith, and determine whether to approve the Settlement and Class Counsel's Application for attorneys' fees and costs and Service Awards.

## VI.    Settlement Administrator

90.    The Parties agree that, subject to Court approval, Angeion Group shall be the Settlement Administrator. The Parties shall jointly oversee the Settlement Administrator. The Settlement Administrator shall fulfill the requirements set forth in the Preliminary Approval Order and the Agreement and comply with all applicable laws, including, but not limited to, the Due Process Clause of the United States Constitution.

91.    The Settlement Administrator shall administer various aspects of the Settlement as described in the next paragraph and perform such other functions as are specified for the Settlement Administrator elsewhere in this Agreement, including, but not limited to, effectuating the Notice Program, handling the Claims process, administering the Net Cash Settlement Fund and Voucher Settlement Program, and distributing the Cash Payments and Product Vouchers to Settlement Class Members who submit a Valid Claim.

92.     The duties of the Settlement Administrator are as follows:

i.      Provide CAFA Notice;

ii.     Complete the Court-approved Notice Program by noticing the Settlement Class by Publication Notice, sending out Long Form Notices, reviewing Claim Forms, notifying Claimants of deficient Claim Forms using the Notice of Missing or Inaccurate Information, and sending Cash Payments and Product Vouchers to Settlement Class Members who submit a Valid Claim;

iii.    Establish and maintain the Cash Settlement Fund escrow bank account approved by the Parties;

iv.     Establish and maintain a post office box for opt-out requests from the Settlement Class and to receive Claim Forms;

v.      Establish and maintain the Settlement Website;

vi.     Establish and maintain an automated toll-free telephone line for Settlement Class members to call with Settlement-related inquiries, and answer the frequently asked questions of Settlement Class members who call with or otherwise communicate such inquiries;

vii.    Respond to any mailed Settlement Class member inquiries;

viii.   Process all opt-out requests from the Settlement Class;

ix.     Provide weekly reports to Class Counsel and Defendant's Counsel that summarize the number of Claims submitted, Claims approved and rejected, opt-out requests received that week, the total number of opt-out requests received to date, and other pertinent information;

x.      In advance of the Final Approval Hearing, prepare a declaration to submit

to the Court confirming that the Notice Program was completed in accordance with the terms of this Agreement and the Preliminary Approval Order, describing how the Notice Program was completed, indicating the amount of valid Claim Forms received, providing the names of each Settlement Class member who timely and properly requested to opt-out from the Settlement Class, and other information as may be necessary to allow the Parties to seek and obtain Final Approval;

xi.     Distribute, out of the Cash Settlement Fund, Cash Payments by paper check to Settlement Class Members who submit a Valid Claim for Cash Payment, unless such a Settlement Class Member elects to receive payment by electronic means.

xii.     Oversee the administration and distribution of the Product Vouchers, including emailing Product Vouchers to Settlement Class Members who submit a Valid Claim for a Product Voucher;

xiii.     Pay Court-approved attorneys' fees and costs, and Service Awards out of the Cash Settlement Fund;

xiv.     Pay Settlement Administration Costs out of the Cash Settlement Fund following approval by Settlement Class Counsel;

xv.     Any other Settlement Administration function at the instruction of Settlement Class Counsel and C&D, including, but not limited to, verifying that the Cash Settlement Fund and Voucher Settlement Program have been properly administered and that the Cash Payments and Product Vouchers have been properly distributed.

93.     All costs incurred by the Settlement Administrator operating as administrator of the Cash Fund and Voucher Settlement Program shall be considered Settlement Administration Costs borne solely by the Cash Settlement Fund. Any interest proceeds and/or income earned by the

Cash Settlement Fund shall remain in the Cash Settlement Fund and be used to pay Settlement expenses.

**VII.**        **Notice to the Settlement Class**

94.        Beginning no later than 20 days following entry of the Preliminary Approval Order, the Settlement Administrator shall implement the Notice Program provided herein, using the forms of Notice approved by the Court. The Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; a date by which Settlement Class members may opt-out of the Settlement Class; a date by which Settlement Class Members may object to the Settlement and/or to Class Counsel's Application for Attorneys' fees, Costs and Service Awards; the date the Final Approval Hearing is scheduled to occur; and the Settlement Website address at which Settlement Class members may access this Agreement and other related documents and information. Settlement Class Counsel and Defendant's Counsel shall insert the correct dates and deadlines in the Notice before the Notice Program commences, based upon those dates and deadlines set by the Court in the Preliminary Approval Order. The Settlement Administrator shall establish the Settlement Website no later than the day Publication Notice is first made and shall have the Court-approved online Claims Form that can be submitted directly on the Settlement Website or in printable version that can be sent by U.S. Mail to the Settlement Administrator.

95.        The Long Form Notice also shall include a procedure for Settlement Class members to opt-out of the Settlement Class, and the Publication Notice shall direct Settlement Class members to review the Long Form Notice to obtain the opt-out instructions. A Settlement Class member may opt-out of the Settlement Class at any time during the Opt-Out Period by mailing a request to opt-out to the Settlement Administrator postmarked no later than the last day

of the Opt-Out Period. The opt-out request must state the Settlement Class member's name, address, telephone number, and email address (if any), and include a statement indicating a request to be excluded from the Settlement Class. Any Settlement Class Member who does not timely and validly request to opt-out shall be bound by the terms of this Agreement even if that Settlement Class Member does not submit a Claim Form.

96.     The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or to the Application for Attorneys' Fees, Costs and Service Awards, and the Publication Notice shall direct Settlement Class members to review the Long Form Notice to obtain the objection instructions. Objections to the Settlement, and to the Application for Attorneys' Fees, Costs and Service Awards, must be mailed to the Clerk of the Court, Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator. For an objection to be considered by the Court, the objection must be submitted no later than the last day of the Objection Period, as specified in the Notice. If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (*e.g.*, Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

97.     For an objection to be considered by the Court, the objection must also set forth:

        a.     the objector's full name, mailing address, telephone number, and email address (if any);

        b.     all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel;

        c.     the number of times the objector has objected to a class action settlement

within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case;

d.       the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards;

e.       the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years;

f.       any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity;

g.       the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing;

h.       a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any);

i.       a statement confirming whether the objector intends to personally appear

and/or testify at the Final Approval Hearing; and

      j.     the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or C&D may conduct limited discovery on any objector or objector's counsel.

**VIII.**      **Final Approval Order and Final Judgment**

98.     Plaintiffs shall file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs and Service Awards, no later than 45 days before the Final Approval Hearing. At the Final Approval Hearing, the Court will hear argument on Plaintiffs' Motion for Final Approval of the Settlement and Application for Attorneys' Fees, Costs and Service Awards. In the Court's discretion, the Court also will hear argument at the Final Approval Hearing from any Settlement Class Members (or their counsel) who object to the Settlement and/or to the Application for Attorneys' Fees, Costs and Service Awards, provided the objectors submitted timely objections that meet all of the requirements listed in the Agreement.

99.     At or following the Final Approval Hearing, the Court will determine whether to enter the Final Approval Order and final judgment thereon, and whether to approve the Application for Attorneys' Fees, Costs and Service Awards. Such proposed Final Approval Order shall, among other things:

      a.     Determine that the Settlement is fair, adequate and reasonable;

      b.     Finally certify the Settlement Class for settlement purposes only;

      c.     Determine that the Notice Program satisfies Due Process requirements;

      d.     Bar and enjoin all Releasing Parties from asserting any of the Released Claims at any time and in any jurisdiction, including during any appeal from the Final Approval Order; bar and enjoin all Releasing Parties from pursuing any Released Claims against Released Parties at any time and in any jurisdiction, including during any appeal

from the Final Approval Order; and retain jurisdiction over the enforcement of the Court's injunctions;

      e.      Release C&D and the other Released Parties from the Released Claims; and

      f.      Reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including C&D, Plaintiffs, all Settlement Class Members, and all objectors, to administer, supervise, construe, and enforce this Agreement in accordance with its terms.

## IX.    Claim Form Process and Disbursement of Cash Payments and Product Vouchers

100.    Claim Forms may be submitted online through the Settlement Website or through U.S. Mail by sending them to the Settlement Administrator at the address designated in the Notice.

101.    The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in this Settlement. Claims that have been properly and timely submitted are Valid Claims. The Settlement Administrator shall examine the Claim Form before designating the claim as a Valid Claim to determine that the information on the Claim Form is reasonably complete and contains sufficient information to enable the mailing or electronic delivery of a Cash Payment and/or Voucher Payment. The Settlement Administrator shall have the sole authority to determine whether a Claim by any Claimant is a Valid Claim.

102.    The Settlement Administrator shall use all reasonable efforts and means to identify and reject duplicate claims. No Settlement Class Member may submit more than one Claim Form. Settlement Class Members seeking benefits from the Cash Settlement Fund and the Voucher Settlement Program shall submit a single Claim Form encompassing the request for both. The Settlement Administrator shall identify any Claim Forms that appear to seek relief on behalf of the

same Settlement Class Member. The Settlement Administrator shall use its best efforts to determine whether there is any duplication of claims, and if there is, contact the Settlement Class Member in an effort to determine which Claim Form is the appropriate one for consideration.

103. The Settlement Administrator shall exercise, in its discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the Claim process. The Settlement Administrator may, in its discretion, deny in whole or in part any Claim Form to prevent actual or possible fraud or abuse. By agreement, the Parties can instruct the Settlement Administrator to take whatever steps it deems appropriate if the Settlement Administrator identifies actual or possible fraud or abuse relating to the submission of claims, including, but not limited to, denying in whole or in part any Claim to prevent actual or possible fraud or abuse. If any fraud is detected or reasonably suspected, the Settlement Administrator and Parties may require information from Claimants or deny Claims, subject to the supervision of the Parties and ultimate oversight by the Court.

104. Claim Forms that do not meet the terms and conditions of this Settlement shall be promptly rejected by the Settlement Administrator and the Settlement Administrator shall advise the Claimant or Settlement Class Member of the reason(s) why the Claim Form was rejected. However, if the Claim Form is rejected for containing incomplete or inaccurate information, and/or omitting required information, the Settlement Administrator may send a Notice of Missing or Inaccurate Information explaining what information is missing or inaccurate and needed to validate the Claim and have it submitted for consideration. The Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. The additional information and/or documentation can include, for example, answers to questions regarding the validity of the Claimant's physical or e-signature. A Claimant shall have until the Claim Form

Deadline, or 15 days from the date the Notice of Missing or Inaccurate Information is sent to the Claimant via mail and postmarked or via email, whichever is later, to reply to the Notice of Missing or Inaccurate Information and provide the required information. If the Claimant timely and adequately provides the requested information and/or documentation, the Claim shall be deemed a Valid Claim and processed by the Settlement Administrator for a Cash Payment and/or Voucher Payment. If the Claimant does not timely and completely provide the requested information and/or documentation, the Settlement Administrator shall reduce or deny the Claim unless C&D and Settlement Class Counsel otherwise agree.

105.    Where a good faith basis exists, the Settlement Administrator may reduce or reject a Claim for, among other reasons, the following:

a.    The Claimant purchased products that are not covered by the Settlement;

b.    Failure to fully complete and/or sign the Claim Form;

c.    Illegible Claim Form;

d.    The Claim Form is fraudulent;

e.    The Claim Form is duplicative of another Claim Form;

f.    The Claimant is not a Settlement Class member;

g.    The Claimant submitted a timely and validly request to opt out of the Settlement Class.

h.    The person or entity submitting the Claim Form requests that payment be made to a person or entity other than the Claimant for whom the Claim Form is submitted;

i.    Failure to submit a Claim Form by the Claim Form Deadline; and/or

j.    The Claim Form otherwise does not comply with the requirements of this Settlement.

106.     The Settlement Administrator's reduction or denial of a Claim is final, subject to the following dispute resolution procedures:

a.     The Settlement Administrator shall have 30 days from the Claim Form Deadline to approve or reject Claims based on findings of fraud or duplication.

b.     A request for additional information by sending a Notice of Missing or Inaccurate Information shall not be considered a rejection for purposes of this Paragraph.

c.     If a Claim is rejected for fraud or duplication, the Settlement Administrator shall notify the Claimant using the contact information provided in the Claim Form. Settlement Class Counsel and Defendant's Counsel shall be provided with copies of all such notifications to Claimants.

d.     The Settlement Administrator's determination as to whether to approve, deny, or reduce a Claim shall be final and binding.

107.     The Settlement Administrator shall provide all information gathered in investigating Claims, including, but not limited to, copies of all correspondence and email and all notes of the Settlement Administrator, the decision reached, and all reasons supporting the decision, if requested by Settlement Class Counsel or Defendant's Counsel.  Additionally, Settlement Class Counsel and C&D's Counsel shall have the right to inspect the Claim Forms and supporting documentation received by the Settlement Administrator at any time upon reasonable notice.

108.     No person or entity shall have any claim against C&D, Defendant's Counsel, Plaintiffs, the Settlement Class, Settlement Class Counsel, Class Counsel, and/or the Settlement Administrator based on any eligibility determinations, distributions, or awards made in accordance with this Settlement.

109.     No later than 75 days after Final Approval or 15 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Cash Payments and email the Product Vouchers.

110.     The Notice and the Settlement Website will explain to Settlement Class members that they may be entitled to a Cash Payment or Voucher Payment, or both, and how to submit a Claim Form.

**X.       Service Awards, Attorneys' Fees and Costs**

111.     *Service Awards* – In recognition of the time and effort the Class Representatives expended in pursuing this Action and in fulfilling their obligations and responsibilities as Class Representatives, and of the relief conferred on all Settlement Class Members by the Settlement, Class Counsel shall request a Service Award for the Class Representatives in the amount not to exceed $2,500.00 each. If approved, the Service Awards shall be paid by the Settlement Administrator out of the Cash Settlement Fund within 5 days of the Effective Date. The Service Award payments to the Class Representatives shall be separate and apart from their entitlement to benefits from the Cash Settlement Fund and/or the Voucher Settlement Program.

112.     *Attorneys' Fees and Costs* - Class Counsel shall apply to the Court for an award of attorneys' fees of up to 33.33% of the Cash Settlement Fund, plus reimbursement of its litigation costs. The attorneys' fees and costs awards approved by the Court shall be paid by the Settlement Administrator out of the Cash Settlement Fund by wire transfer to an account designated by Settlement Class Counsel, within 5 days of the Effective Date.

113.     Class Counsel's fees shall be based only on the Cash Settlement Fund, and shall in no way be based on nor tied to the Voucher Settlement Program.

114.     This Settlement is not contingent on approval of the request for attorneys' fees and

costs or Service Awards, and if the Court denies the request or grants amounts other than what was requested, the remaining provisions of the Agreement shall remain in force. The provisions for attorneys' fees and costs and the Service Awards were not negotiated until after the material Settlement terms, including the amount of the Cash Settlement Fund and Voucher Settlement Program, and the Settlement Class definition, were negotiated.

115.     This Settlement is contingent on approval of the Settlement consideration set forth in Section IV and the Releases set forth in Section XII of this Agreement.  If the Court denies or modifies those proposed terms, the remaining provisions of the Agreement shall be null and void.

## XI.     Disposition of Residual Funds

116.     Settlement Class Members receiving payment by check shall have 180 days to negotiate the check. Any funds remaining in the Cash Settlement Fund 20 days following the 180-day check negotiation period on account of uncashed or undeliverable checks shall be distributed to a *cy pres* recipient approved by the Court.

## XII.     Releases

117.     As of the Effective Date, the Releasing Parties shall automatically be deemed to have fully, finally, and irrevocably released and forever discharged the Released Parties of, and shall be forever barred from instituting, maintaining, or prosecuting, any and all liabilities, rights, claims, actions, causes of action, demands, damages, costs, attorneys' fees, losses and remedies, whether known or unknown, asserted or unasserted, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, based on contract, tort or any other theory, whether on behalf of themselves or others, that result from, arise out of, are based upon, or relate to (a) the alleged adulteration or contamination of any of the Bare™ Products or Batiste™ Products, including any alleged benzene adulteration or contamination, (b) any of the

alleged violations of laws or regulations cited in the Complaint or any alleged violations of any materially similar laws or regulations, (c) any of the advertising or marketing identified in the Complaint, including but not limited to the alleged failure to disclose the presence of benzene in the Bare™ Products or Batiste™ Products, (d) any testing alleged in the Complaint, (e) any acts, omissions, or misrepresentations that were raised or could have been raised within the scope of the facts asserted in the Complaint, including any claim that was or could be asserted under California's Proposition 65, or (f) any event, matter, dispute, or thing that in whole or in part, directly or indirectly, relates to or arises out of said events specified in (a), (b), (c), (d), or (e) of this paragraph.

118.    Plaintiffs and the Settlement Class Members covenant and agree that they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, whether on behalf of themselves or others, against any of the Released Parties in any jurisdiction.

119.    Settlement Class members who opt-out of the Settlement prior to the Opt-Out Deadline do not release their claims and will not obtain any benefits under the Settlement.

120.    With respect to the Released Claims, Plaintiffs and Settlement Class Members, expressly understand and acknowledge that it is possible that unknown economic losses or claims exist or that present losses may have been underestimated in amount or severity. Plaintiffs and Settlement Class Members explicitly took that into account in entering into this Agreement, and a portion of the consideration and the mutual covenants contained herein, having been bargained for between Plaintiffs and C&D with the knowledge of the possibility of such unknown claims for economic loss, were given in exchange for a full accord, satisfaction, and discharge of all such claims. Consequently, Plaintiffs and the Settlement Class Members shall be deemed to have, and

by operation of the Settlement shall have, expressly waived and relinquished, to the fullest extent

permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code

(to the extent it is applicable, or any other similar provision under federal, state or local law to the

extent any such provision is applicable), which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
> FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN
> BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
> SETTLEMENT WITH THE DEBTOR.

121.    Plaintiffs or any Settlement Class Member may hereafter discover facts other than

or different from those that he or she knows or believes to be true with respect to the subject matter

of the claims released herein, or the law applicable to such claims may change. Nonetheless, each

of those individuals expressly agrees that, as of the Effective Date, he or she shall have

automatically and irrevocably waived and fully, finally, and forever settled and released any

known or unknown, suspected or unsuspected, asserted or unasserted, liquidated or unliquidated,

contingent or non-contingent claims with respect to all of the matters described in or subsumed by

this Agreement. Further, each of those individuals agrees and acknowledges that he or she shall be

bound by this Agreement, including by the release herein and that all of their claims in the Action

shall be dismissed with prejudice and released, whether or not such claims are concealed or hidden;

without regard to subsequent discovery of different or additional facts and subsequent changes in

the law; and even if he or she never receives actual notice of the Settlement and/or never receives

a Cash Payment or Voucher Payment from the Settlement.

122.    Plaintiffs expressly represent that they do not currently have any other claims as

to any Bare™ Products or Batiste™ Products.

123.    Upon the Effective Date: (a) this Settlement shall be the exclusive remedy for any

and all Released Claims of Plaintiffs and Settlement Class Members; and (b) Plaintiffs and Settlement Class Members stipulate to be and shall be permanently barred and enjoined by Court order from initiating, asserting, or prosecuting any Released Claim against the Released Parties, whether on behalf of Plaintiffs, any Settlement Class Member or others, in any jurisdiction, including in any federal, state, or local court or tribunal.

**XIII.**      <u>**Termination of the Settlement**</u>

124.      This Agreement shall be subject to and is expressly conditioned on the occurrence of all of the following events:

     a.      Court approval of the Settlement consideration set forth in Section IV and the Releases set forth in Section XII of this Agreement;

     b.      The Court has entered the Preliminary Approval Order;

     c.      The Court has entered the Final Approval Order, and all objections, if any, are overruled, and all appeals taken from the Final Approval Order are resolved in favor of approval; and

     d.      The Effective Date has occurred.

125.      If any of the conditions specified in the preceding paragraph are not met, then this Agreement shall be cancelled and terminated.

126.      C&D shall have the option to terminate this Agreement if more than 25 Settlement Class members opt-out of the Settlement. C&D shall notify Settlement Class Counsel and the Court of its intent to terminate this Agreement pursuant to this paragraph within 10 days after the end of the Opt-Out Period, or the option to terminate shall be considered waived.

127.      In the event this Agreement is terminated or fails to become effective, then the Parties shall return to the *status quo ante* in the Action as if the Parties had not entered into this

Agreement, and the parties shall jointly file a status report in the Court seeking to reopen the Action

and all papers filed, including C&D's motion to dismiss, which shall be deemed pending. In such

event, the terms and provisions of this Agreement shall have no further force and effect with

respect to the Parties and shall not be used in this case or in any other action or proceeding for any

other purpose, and any order entered by this Court in accordance with the terms of this Agreement

shall be treated as vacated, *nunc pro tunc*.

128. In the event this Agreement is terminated or fails to become effective, all funds in

the Cash Settlement Fund shall be promptly returned to C&D. In the event the Court denies Final

Approval of the Settlement or it is overturned on appeal, such funds shall be returned to C&D

within 21 calendar days of the Court's denial or the decision overturning the Settlement.

## XIV.      Effect of Termination

129. The grounds upon which this Agreement may be terminated are set forth herein

above. In the event of a termination, this Agreement shall be considered null and void; all of

Plaintiffs', Class Counsel's, and C&D's obligations under the Settlement shall cease to be of any

force and effect; and the Parties shall return to the *status quo ante* in the Action as if the Parties

had not entered into this Agreement. In addition, in the event of such a termination, all of the

Parties' respective pre-Settlement rights, claims and defenses will be retained and preserved.

130. In the event the Settlement is terminated in accordance with the provisions of this

Agreement, any discussions, offers, or negotiations associated with this Settlement shall not be

discoverable or offered into evidence or used in the Action or any other action or proceeding for

any purpose. In such event, all Parties to the Action shall stand in the same position as if this

Agreement had not been negotiated, made, or filed with the Court.

## XV.      No Admission of Liability

131. This Agreement reflects the Parties' compromise and settlement of disputed

claims. This Agreement shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law. C&D has denied and continues to deny each of the claims and contentions alleged in the Complaint. C&D specifically denies that a class could or should be certified in the Action for litigation purposes. C&D does not admit any liability or wrongdoing of any kind, by this Agreement or otherwise. C&D has agreed to enter into this Agreement to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to be completely free of any further claims that were asserted or could possibly have been asserted in the Action.

132.     Class Counsel believe that the claims asserted in the Action have merit, and they have examined and considered the benefits to be obtained under the proposed Settlement set forth in this Agreement, the risks associated with the continued prosecution of this complex, costly, and time-consuming litigation, and the likelihood of success on the merits of the Action. Class Counsel fully investigated the facts and law relevant to the merits of the claims, conducted discovery, including reviewing testing provided by C&D contradicting the allegations in the Complaint and in the Citizen's Petition filed by Valisure, and conducted independent investigation of the alleged claims. Class Counsel concluded that the proposed Settlement set forth in this Agreement is fair, adequate, reasonable, and in the best interests of the Settlement Class members.

133.     The Parties understand and acknowledge that this Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties in connection with the negotiations of this Agreement shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made, or an acknowledgment or admission by any party of any fault, liability, or wrongdoing of any kind whatsoever.

134.     Neither the Settlement, nor any act performed or document executed pursuant to

or in furtherance of the Settlement: (a) is or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any claim made by the Plaintiffs or Settlement Class members, or of any wrongdoing or liability of the Released Parties; or (b) is or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of any of the Released Parties, in the Action or in any proceeding in any court, administrative agency, or other tribunal.

135.     In addition to any other defenses C&D may have at law, in equity, or otherwise, to the extent permitted by law, this Agreement may be pleaded as a full and complete defense to and may be used as the basis for an injunction against, any action, suit, or other proceeding that may be instituted, prosecuted, or attempted in breach of this Agreement or the Releases contained herein.

### XVI.     **Miscellaneous Provisions**

136.     <u>Gender and Plurals</u>. As used in this Agreement, the masculine, feminine or neuter gender, and the singular or plural number, shall each be deemed to include the others whenever the context so indicates.

137.     <u>Binding Effect</u>. This Agreement shall be binding upon, and inure to and for the benefit of, the successors and assigns of the Releasing Parties and the Released Parties.

138.     <u>Cooperation of Parties</u>. The Parties to this Agreement agree to cooperate in good faith to prepare and execute all documents, seek Court approval, uphold Court approval, and do all things reasonably necessary to complete and effectuate the Settlement described in this Agreement.

139.     <u>Obligation to Meet and Confer</u>. Before filing any motion in the Court raising a dispute arising out of or related to this Agreement, the Parties shall consult with each other and certify to the Court that they have consulted.

140.    <u>Integration and No Reliance</u>. This Agreement constitutes a single, integrated written contract expressing the entire agreement of the Parties relative to the subject matter hereof. This Agreement is executed without reliance on any covenant, agreement, representation, or warranty by any Party or any Party's representative other than those expressly set forth in this Agreement. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any Party hereto, except as provided for herein.

141.    <u>No Conflict Intended</u>. Any inconsistency between the headings used in this Agreement and the text of the paragraphs of this Agreement shall be resolved in favor of the text.

142.    <u>Governing Law</u>. Except as otherwise provided herein, the Agreement shall be construed in accordance with, and be governed by, the laws of the state of Illinois, without regard to the principles thereof regarding choice of law.

143.    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument, even though all Parties do not sign the same counterparts. Original signatures are not required. Any signature submitted by facsimile or through email of an Adobe PDF shall be deemed an original.

144.    <u>Jurisdiction</u>. The Court shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation, and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice Program and

the Settlement Administrator. As part of their agreement to render services in connection with this Settlement, the Settlement Administrator shall consent to the jurisdiction of the Court for this purpose. The Court shall retain jurisdiction over the enforcement of the Court's injunction barring and enjoining all Releasing Parties from asserting any of the Released Claims and from pursuing any Released Claims against the Released Parties at any time and in any jurisdiction, including during any appeal from the Final Approval Order.

145.    Notices. All notices provided for herein, shall be sent by email with a hard copy sent by overnight mail to:

If to Plaintiffs or Class Counsel:

> Jeff Ostrow
> Kopelowitz Ostrow P.A.
> 1 W. Las Olas Blvd., Ste. 500
> Fort Lauderdale, FL 33301
> ostrow@kolawyers.com

> Sarah N. Westcot
> Bursor & Fisher P.A.
> 701 Brickell Ave., Ste. 1420
> Miami, FL 33131
> swestcot@bursor.com

> Nick Suciu III
> Milberg Coleman Bryson Phillips Grossman
> 6905 Telegraph Rd., Ste. 115
> Bloomfield Hills, MI 48301
> nsuciu@milberg.com

If to Defendant or Defendant's Counsel:

> Baldassare Vinti
> Proskauer Rose LLP
> 11 Times Square
> New York, NY 10036
> bvinti@proskauer.com

The notice recipients and addresses designated above may be changed by written notice. Upon the

request of any of the Parties, the Parties agree to promptly provide each other with copies of objections, requests for exclusion, or other filings received as a result of the Notice Program.

146.     Modification and Amendment. This Agreement may not be amended or modified, except by a written instrument signed by Settlement Class Counsel and C&D's Counsel and, if the Settlement has been approved preliminarily by the Court, approved by the Court.

147.     No Waiver. The waiver by any Party of any breach of this Agreement by another Party shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent, or contemporaneous, of this Agreement.

148.     Authority. Settlement Class Counsel (for the Plaintiffs and the Settlement Class members), and C&D's Counsel, represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation, or entity included within the definitions of Plaintiffs and C&D to all terms of this Agreement. Any person executing this Agreement in a representative capacity represents and warrants that he or she is fully authorized to do so and to bind the Party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

149.     Agreement Mutually Prepared. Neither Plaintiffs nor C&D shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

150.     Independent Investigation and Decision to Settle. The Parties understand and acknowledge that they: (a) have performed an independent investigation of the allegations of fact and law made in connection with this Action; and (b) that even if they may hereafter discover facts in addition to, or different from, those that they now know or believe to be true with respect to the

subject matter of the Action as reflected in this Agreement, that will not affect or in any respect limit the binding nature of this Agreement. All Parties recognize and acknowledge that they reviewed and analyzed data for a subset of the time at issue and that they and their experts used extrapolation to make certain determinations, arguments, and settlement positions. The Parties agree that this Settlement is fair, reasonable, and adequate, and will not attempt to renegotiate or otherwise void or invalidate or terminate the Settlement irrespective of what any unexamined data later shows. It is the Parties' intention to resolve their disputes in connection with this Action pursuant to the terms of this Agreement now and thus, in furtherance of their intentions, the Agreement shall remain in full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and this Agreement shall not be subject to rescission or modification by reason of any changes or differences in facts or law, subsequently occurring or otherwise.

151.    <u>Receipt of Advice of Counsel</u>. Each Party acknowledges, agrees, and specifically warrants that he, she, or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering into this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.

*Signature Page to Follow*

Dated: May 25, 2023

EMILY EVANS
*Plaintiff*

Dated: May 25, 2023

CAITLIN HASSETT
*Plaintiff*

Dated: May 25, 2023

JEFF OSTROW, ESQ.
KOPELOWITZ OSTROW P.A.
*Settlement Class Counsel*

Dated: May 25, 2023

SARAH N. WESTCOT, ESQ.
BURSOR & FISHER
*Settlement Class Counsel*

Dated: May 25, 2023

NICK SUCIU III, ESQ.
MILLBERG
*Settlement Class Counsel*

Dated: May 25, 2023

CHURCH & DWIGHT CO., INC.

By: Moira L. Brophy

ITS Associate General Counsel & Asst. Secretary

Dated: May 25, 2023

BALDASSARE VINTI
*Counsel for Defendant*

# EXHIBIT A

*Evans et al. v. Church & Dwight Co., Inc.*, Case No. 22-cv-6301

**IF YOU PURCHASED A BATISTE™ DRY SHAMPOO PRODUCT
MANUFACTURED BY CHURCH & DWIGHT, CO., INC., PRIOR TO
_____, 2023, YOU MAY BE ENTITLED TO
MAKE A CLAIM FOR A CASH PAYMENT OR A PRODUCT VOUCHER
UNDER A CLASS ACTION SETTLEMENT, AND YOUR LEGAL RIGHTS
COULD BE AFFECTED BY THAT SETTLEMENT.**

*A U.S. Dist. Ct. for the N. Dist. of Ill. authorized this Notice.
This is **not** a solicitation from a lawyer.*

**You must file a timely and Valid Claim to receive a Cash Payment or Product Voucher under the Settlement. Read this Notice and visit www._____ or call _____ for more information.**

**What is this Notice about?**  A proposed settlement has been reached in a class action proceeding. The complaint in this Action claims that Batiste™ dry shampoo products marketed by Church & Dwight, Co., Inc. ("C&D") allegedly contained benzene. C&D denies the allegations of the complaint and disputes any allegation of wrongdoing whatsoever. The Parties, however, have decided to settle the Action. The Settlement, if approved, resolves the lawsuit and provides benefits to Settlement Class Members who do not opt-out from the Settlement Class.

**Who is included?**  The Settlement Class consists of all natural persons in the United States who prior to [INSERT DATE OF PRELIMINARY APPROVAL] have purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale.

**What benefits does the Settlement provide?**  Under the Settlement, C&D has agreed to pay $2,500,000.00 into a Cash Settlement Fund for Batiste™ Bare™ and Clean & Light Bare™ dry shampoo products and to give $600,000.00 worth of Product Vouchers for other Batiste™ Products, for the benefit of Settlement Class Members. Under the proposed Settlement, each Settlement Class member will have an opportunity to file a Claim for a Cash Payment and/or a Product Voucher from C&D, depending upon which dry shampoo products they purchased. If the Settlement is approved and becomes final, each Settlement Class Member who purchased a Bare™ Product that files a Valid Claim will be entitled to a Cash Payment, the amount of which depends upon whether there is Proof of Purchase. If Proof of Purchase is included, the Cash Payment will be for the full purchase price for as many Bare™ Products purchased and identified on the Claim Form, subject to the *pro rata* increase or reduction described below. Settlement Class Members who purchased Bare™ Products, but do not have Proof of Purchase, shall be entitled to $2.00 for each Bare™ Product purchased (subject to the *pro rata* increase or reduction described below), for a maximum of five products claimed. Settlement Class Members who purchased Batiste™ Products, other than Bare™ Products, and submit a Valid Claim, shall receive a Product Voucher for $2.00 (subject to the *pro rata* increase or reduction described below), up to a maximum of five products claimed. Some Settlement Class Members may be entitled to a Cash Payment and a Product Voucher, if the Valid Claim is for both benefits. The Cash Settlement Fund will be used to pay Court-awarded attorneys' fees and litigation costs to Class Counsel, Service Awards to the Class Representatives, and Settlement Administration Costs. Class Counsel will be requesting up to 33.33% of the Cash Settlement Fund, or $833,333.33, for attorneys' fees and up to $2,500.00

for each of the Plaintiffs for serving as Class Representatives. Each eligible Settlement Class Member's actual Cash Payment from the Net Settlement Fund and/or Product Voucher will be reduced or increased *pro rata* based upon the number and total dollar amount of Valid Claims received.

**What are the options?**  You must file a timely and Valid Claim to receive a Cash Payment and/or a Product Voucher. Claim Forms may be filed online at www._____ or by mailing the Claim Form to _____. Claim Forms must be submitted or postmarked no later than _____, **2023**. If you are a Settlement Class member and do nothing, and the Settlement is approved and becomes final, you will <u>not</u> receive a Cash Payment or a Product Voucher under this Settlement, and you will give up your right to bring your own lawsuit against C&D about the issues in the Action. If you opt-out of the Settlement Class (meaning you are excluding yourself), you will give up your right to receive a Cash Payment and/or Product Voucher, but will retain any right you may have to sue C&D about the issues in this Action. To opt-out, you must mail a signed, written request to opt-out, postmarked no later than _____, **2023**, to: _____. Requests to opt-out must be specific to individual Settlement Class members, and Settlement Class members cannot request to opt-out as a class or group. If you do not opt-out, you may object to the Settlement and/or to Class Counsel's request for attorneys' fees and costs and for Service Awards to the Class Representatives. Your objection must be postmarked no later than _____, **2023**. For more information on the opt-out and objection requirements, visit www._____.

**What happens next?**  The Court will hold a final approval hearing on _____, **2023 at _____ a.m./p.m. CT**, at the United States District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois 60604, Courtroom _____, to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class. If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost. The date and time of this hearing may change without further notice. Please check www._____ for updates.

**Who represents the Settlement Class?**  The Court has appointed the following attorneys at the following law firms to represent the Settlement Class in Settlement: Jeff Ostrow of Kopelowitz Ostrow P.A., Nick Suciu III of Milberg Coleman Bryson Phillips Grossman, and Sarah N. Westcot of Bursor & Fisher P.A. Together, these attorneys are called Settlement Class Counsel. Settlement Class members do not need to pay these attorneys out of their pocket. These attorneys and other Class Counsel who worked on behalf of the Plaintiffs and Settlement Class will apply for compensation under the terms of the Settlement. If you are a Settlement Class member and want to be represented by your own lawyer, you may hire one at your own expense.

**How do I get more information?**  For more information, including to view copies of case documents including a long form notice about your rights under the proposed Settlement, the full Settlement Agreement, and other important documents related to the Settlement (once they are filed), visit www._____ or call _____. **PLEASE DO NOT CONTACT THE COURT OR CHURCH & DWIGHT, CO., INC.**

# EXHIBIT B

# NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

United States District Court for the Northern District of Illinois
*Evans et al. v. Church & Dwight Co., Inc.*
Case No. 1:22-cv-06301

**IF YOU PURCHASED A BATISTE™ DRY SHAMPOO PRODUCT MANUFACTURED BY CHURCH & DWIGHT, CO., INC. PRIOR TO _____, 2023, YOU MAY BE ENTITLED TO MAKE A CLAIM FOR A CASH PAYMENT OR A PRODUCT VOUCHER UNDER A CLASS ACTION SETTLEMENT, AND YOUR LEGAL RIGHTS COULD BE AFFECTED BY THAT SETTLEMENT.**

*A federal court authorized this Notice. You are not being sued.*
*This is **not** a solicitation from a lawyer.*

- A Settlement has been reached with Church & Dwight Co., Inc. ("C&D" or "Defendant") in a class action lawsuit about alleged benzene contamination in certain Batiste™ dry shampoo products marketed by C&D.

- The lawsuit is captioned *Evans et al. v. Church & Dwight Co., Inc.*, Case No. 1:22-cv-06301 (the "Action"), pending in the United States District Court, Northern District of Illinois. C&D denies the lawsuit's allegations and denies that it did anything wrong but has agreed to settle the Action to avoid the costs and distractions associated with continuing this case.

- You are included in this Settlement as a Settlement Class member if, in the United States, you purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale prior to _____, 2023.

- Your rights are affected whether you act or don't act. Please read this Notice carefully.

| SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | DEADLINE |
|---|---|---|
| **SUBMIT A CLAIM** | The only way to receive a cash payment from this Settlement is by submitting a valid and timely Claim Form. <br><br> You can submit your Claim Form online at _____ or download the Claim Form from the Settlement Website and mail it to the Settlement Administrator. You may also call or email the Settlement Administrator to receive a paper copy of the Claim Form. | **_____, 2023** |
| **OPT OUT OF THE SETTLEMENT** | You can choose to opt out of the Settlement and receive no payment. This option allows you to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. You can elect your own legal counsel at your own expense. | **_____, 2023** |
| **OBJECT TO THE SETTLEMENT AND/OR ATTEND A HEARING** | If you do not opt out of the Settlement, you may object to it by writing to the Court about why you don't like the Settlement. You may also ask the Court for permission to speak about your objection at the Final Approval Hearing. If you object, you may also file a claim for a payment. | **_____, 2023** |
| **DO NOTHING** | Unless you opt out of the settlement, you are automatically part of the Settlement. If you do nothing, you will not get a payment from this Settlement and you will give up the right to sue, continue to sue, or be part of another lawsuit against the Defendant related to the legal claims resolved by this Settlement. | No Deadline |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still has to decide whether to approve the Settlement.

## WHAT THIS NOTICE CONTAINS

BASIC INFORMATION .................................................................................................................. 3

WHO IS IN THE SETTLEMENT ................................................................................................... 4

THE SETTLEMENT BENEFITS..................................................................................................... 5

HOW TO GET A PAYMENT—MAKING A CLAIM .................................................................. 6

THE LAWYERS REPRESENTING YOU ..................................................................................... 6

OPTING OUT OF THE SETTLEMENT......................................................................................... 7

COMMENTING ON OR OBJECTING TO THE SETTLEMENT .................................................. 7

THE COURT'S FINAL APPROVAL HEARING .......................................................................... 9

IF I DO NOTHING .......................................................................................................................... 9

GETTING MORE INFORMATION ................................................................................................ 9

## BASIC INFORMATION

### 1. Why was this Notice issued?

A federal court authorized this Notice because you have a right to know about the proposed Settlement of this class action lawsuit and about all of your options before the Court decides whether to grant final approval of the Settlement. This Notice explains the lawsuit, your legal rights, what benefits are available, and who can receive them.

The Honorable Virginia M. Kendall of the United States District Court for the Northern District of Illinois is overseeing this class action. The lawsuit is captioned *Evans et al. v. Church & Dwight Co., Inc.,* Case No. 1:22-cv-06301 (N.D. Ill.). The people that filed this lawsuit are called the "Plaintiffs" and the company they sued, Church & Dwight Co., Inc., is called the "Defendant."

### 2. What is this lawsuit about?

This lawsuit alleges that Batiste™ dry shampoo products marketed by Church & Dwight, Co., Inc. allegedly contained unsafe levels of benzene. The Defendant denies the lawsuit's allegations, and denies that it did anything wrong, but nevertheless has decided to settle the Action to avoid the costs and distractions associated with continuing this case. The Settlement, if approved, resolves the lawsuit and provides benefits to Settlement Class Members who do not opt-out from the Settlement Class.

### 3. What is a class action?

In a class action, one or more individuals sue on behalf of other people with similar claims. These individuals are known as "Class Representatives" or "Plaintiffs." Together, the people included in the

class action are called a "class" or "class members." One court resolves the lawsuit for all class members, except for those who opt out from a settlement. In this Settlement, the Class Representatives are Emily Evans and Caitlin Hassett.

## 4. Why is there a Settlement?

The Court did not decide in favor of the Plaintiffs or the Defendant. The Defendant denies all claims and contends that it has not violated any laws whatsoever. Plaintiffs and the Defendant agreed to a Settlement to avoid the costs and distractions associated with continuing this case, and to allow the Settlement Class Members to receive payments from the Settlement. The Plaintiffs and their attorneys think the Settlement is best for all Settlement Class members.

## WHO IS IN THE SETTLEMENT?

## 5. Who is included in the Settlement?

The Settlement Class consists of all persons and entities in the United States who, prior to [INSERT DATE OF PRELIMINARY APPROVAL], 2023, purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale.

"Bare™ Product(s)" means Batiste's™ Bare™ and Clean & Light Bare™ dry shampoo product or products marketed by C&D.

"Batiste™ Product(s)" means all Batiste™ dry shampoo products marketed by C&D.

## 6. Are there exceptions to being included?

Yes. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of C&D, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Bare™ Products or Batiste™ Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; (d) persons or entities who timely and properly opt-out of the Settlement; and (e) the Court, the Court's immediate family, and Court staff.

If you are not sure whether you are included in the Settlement Class, you can ask for free help by emailing or writing to Settlement Administrator at:

[email address]

_____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

You may also view the Settlement Agreement and Releases ("Settlement Agreement") at [Website URL].

## THE SETTLEMENT BENEFITS

### 7. What does the Settlement provide?

Under the Settlement, C&D has agreed to pay $2,500,000.00 into a Cash Settlement Fund for Bare™ Products and to give $600,000.00 worth of Product Vouchers for Batiste™ Products (other than Bare™ Products), for the benefit of Settlement Class members. Under the proposed Settlement, each Settlement Class member will have an opportunity to file a Claim for a Cash Payment and/or a Product Voucher from C&D, depending upon which dry shampoo products they purchased. The Cash Settlement Fund will also be used to pay Court-awarded attorneys' fees and litigation costs to Class Counsel, Service Awards to the Class Representatives, and Settlement Administration Costs.

### 8. How much will my payment be?

If the Settlement is approved and becomes final, each Settlement Class Member who purchased a Bare™ Product that files a Valid Claim will be entitled to a Cash Payment, the amount of which depends upon whether there is Proof of Purchase. If Proof of Purchase is included, the Cash Payment will be for the full purchase price for as many Bare™ Products purchased and identified on the Claim Form. Settlement Class Members who purchased Bare™ Products, but do not have Proof of Purchase, shall be entitled to $2.00 for each Bare™ Product purchased, for a maximum of five products claimed. There may be a pro rata increase or reduction to each Settlement Class Member's amount of their Product Voucher, depending upon the total amount of dollars calculated for Valid Claims in comparison to the $600,000.00 Voucher Settlement Program.

Settlement Class Members who purchased Batiste™ Products, other than Bare™ Products, and submit a Valid Claim, shall receive a Product Voucher for $2.00, up to a maximum of five products claimed. Some Settlement Class Members may be entitled to a Cash Payment and a Product Voucher, if the Valid Claim is for both benefits.

Each eligible Settlement Class Member's actual Cash Payment from the Net Settlement Fund and/or Product Voucher will be increased or reduced pro rata based upon the number and total dollar amount of Valid Claims received.

### 9. What claims am I releasing if I stay in the Settlement Class?

Unless you opt out of the Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against the Defendant about any of the legal claims this Settlement resolves. The "Releases" section in the Settlement Agreement describes the legal claims that you give up if you remain in the Settlement Class. The Settlement Agreement can be found at [Website URL].

## HOW TO GET A PAYMENT – MAKING A CLAIM

### 10. How do I submit a claim and get a cash payment?

You may file a claim if you are a person or entity in the United States who, prior to _____, 2023, purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale.

Claim Forms may be submitted online at [Website URL] or printed from the website and mailed to the Settlement Administrator at: _____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103.

You may also contact the Settlement Administrator to request a Claim Form by telephone 1-XXX-XXX-XXXX, by email [Email Address], or by U.S. mail at the address above.

### 11. What is the deadline for submitting a claim?

If you submit a claim by U.S. mail, the completed and signed Claim Form must be postmarked by [Deadline Date]. If submitting a Claim Form online, you must do so by [Deadline Date].

### 12. When will I get my payment?

The Court will hold a final approval hearing on _____, 2023 to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class.

If the Court approves the Settlement, there may be appeals. It is always uncertain whether appeals will be filed and, if so, how long it will take to resolve them. Settlement payments will be distributed as soon as possible, if and when the Court grants final approval to the Settlement and after any appeals are resolved.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in the case?

Yes. The Court has appointed the following attorneys at the following law firms to represent the Settlement Class in this Settlement: Jeff Ostrow of Kopelowitz Ostrow P.A., Nick Suciu III of Milberg Coleman Bryson Phillips Grossman, and Sarah N. Westcot of Bursor & Fisher P.A. Together, these attorneys are called Settlement Class Counsel.

## 14. Should I get my own lawyer?

You do not need to hire your own lawyer because Class Counsel works for you. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 15. How will the lawyers be paid?

Class Counsel will be requesting up to 33.33% of the Cash Settlement Fund, or $833,333.33 for attorneys' fees and up to $2,500.00 for each of the Plaintiffs for serving as Class Representatives. The Court may award less than these amounts. If approved, these fees, costs and awards will be paid from the Cash Settlement Fund.

### EXCLUDING YOURSELF FROM THE SETTLEMENT

## 16. How do I opt out of the Settlement?

If you do not want to receive any benefits from the Settlement, and you want to keep your right, if any, to separately sue the Defendant about the legal issues in this case, you must take steps to exclude yourself from the Settlement Class. This is called "opting out" of the Settlement Class. The deadline for requesting exclusion from the Settlement is **[Deadline Date]**.

To exclude yourself from the Settlement, you must submit a written request for exclusion that includes the following information: (i) the case name: *Evans et al. v. Church & Dwight Co., Inc.*, Case No. 1:22-cv-06301 (N.D. Ill.); (ii) your name, address, telephone number, and email address (if any); (iii) your personal signature; and (iv) a statement clearly indicating your intent to be excluded from the Settlement Class.

Your request for exclusion must be mailed to the Settlement Administrator at the address below, postmarked no later than **[Deadline Date]**.

_____Settlement
ATTN: Exclusion Request
PO Box 58220
Philadelphia, PA 19102

If you exclude yourself, you are stating to the Court that you do not want to be part of the Settlement. You will not be eligible to receive a payment if you exclude yourself. You may only exclude yourself – not any other person.

**Questions? Call 1-XXX-XXX-XXXX Toll-Free or Visit [Website URL]**          7

## COMMENTING ON OR OBJECTING TO THE SETTLEMENT

**17. How do I tell the Court if I like or do not like the Settlement?**

If you are a Settlement Class Member, you can choose (but are not required) to object to the Settlement if you do not like it or a portion of it. You can give reasons why you think the Court should not approve it. The Court will consider your views.

For an objection to be considered by the Court, the objection must also set forth: (a) the objector's full name, mailing address, telephone number, and email address (if any); (b) all grounds for the objection, accompanied by any legal support for the objection known to the objector or objector's counsel; (c) the number of times the objector has objected to a class action settlement within the 5 years preceding the date that the objector files the objection, the caption of each case in which the objector has made such objection, and a copy of any orders related to or ruling upon the objector's prior objections that were issued by the trial and appellate courts in each listed case; (d) the identity of all counsel who represent the objector, including any former or current counsel who may be entitled to compensation for any reason related to the objection to the Settlement and/or Application for Attorneys' Fees, Costs and Service Awards; (e) the number of times in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the 5 years preceding the date of the filed objection, the caption of each case in which counsel or the firm has made such objection and a copy of any orders related to or ruling upon counsel's or the counsel's law firm's prior objections that were issued by the trial and appellate courts in each listed case in which the objector's counsel and/or counsel's law firm have objected to a class action settlement within the preceding 5 years; (f) any and all agreements that relate to the objection or the process of objecting—whether written or oral—between objector or objector's counsel and any other person or entity; (g) the identity of all counsel (if any) representing the objector who will appear at the Final Approval Hearing; (h) a list of all persons who will be called to testify at the Final Approval Hearing in support of the objection (if any); (i) a statement confirming whether the objector intends to personally appear and/or testify at the Final Approval Hearing; and (j) the objector's signature (an attorney's signature is not sufficient).

Class Counsel and/or C&D may conduct discovery on any objector or objector's counsel.

Objections must be mailed to the Clerk of the Court, Settlement Class Counsel, Defendant's Counsel, and the Settlement Administrator. The deadline to submit an objection is **[Deadline Date]**.

If submitted by mail, an objection shall be deemed to have been submitted when posted if received with a postmark date indicated on the envelope if mailed first-class postage prepaid and addressed in accordance with the instructions. If submitted by private courier (e.g., Federal Express), an objection shall be deemed to have been submitted on the shipping date reflected on the shipping label.

| Clerk of Court | Class Counsel | Class Counsel |
|---|---|---|
| Clerk of Court<br>Dirksen U.S. Courthouse<br>219 S. Dearborn Street<br>Chicago, IL 60604 | Jeff Ostrow<br>Kopelowitz Ostrow P.A.<br>1 W. Las Olas Blvd., Ste. 500<br>Fort Lauderdale, FL 33301 | Sarah N. Westcot<br>Bursor & Fisher P.A.<br>701 Brickell Ave., Ste. 1420<br>Miami, FL 33131 |

| Class Counsel | Defendant's Counsel | Settlement Administrator |
|---|---|---|
| Nick Suciu III<br>Milberg Coleman Bryson<br>Phillips Grossman<br>6905 Telegraph Rd., Ste. 115<br>Bloomfield Hills, MI 48301 | Baldassare Vinti<br>Proskauer Rose LLP<br>Eleven Times Square, NY 10036 | _____Settlement<br>ATTN: Objections<br>PO Box 58220<br>Philadelphia, PA 19102 |

## 18. What is the difference between objecting and excluding?

Objecting is telling the Court that you do not like something about the Settlement. You can object to the Settlement only if you do not exclude yourself from the Settlement. Excluding yourself from the Settlement is opting out and stating to the Court that you do not want to be part of the Settlement. If you opt out of the Settlement, you cannot object to it because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

## 19. When is the Court's Final Approval Hearing?

The Court will hold a final approval hearing on _____, 2023 at _____ a.m./p.m. CT, at the United States District Court for the Northern District of Illinois, 219 S. Dearborn Street, Chicago, Illinois 60604, Courtroom _____, to decide whether to approve the Settlement, how much attorneys' fees and costs to award to Class Counsel for representing the Settlement Class, and whether to award a Service Award to each Class Representative who brought this Action on behalf of the Settlement Class. If you are a Settlement Class Member, you or your attorney may ask permission to speak at the hearing at your own cost. The date and time of this hearing may change without further notice. Please check www._____ for updates.

## 20. Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions the Court may have. You may attend at your own expense if you wish. If you file an objection, you do not have to come to the Final Approval Hearing to talk

about it. If you file your written objection on time, the Court will consider it. You may also pay your own lawyer to attend, but such attendance is not necessary for the Court to consider an objection that was filed on time.

## IF I DO NOTHING

### 21. What happens if I do nothing at all?

If you are a Settlement Class member and you do nothing, you will give up the rights explained in **Question 9**, including your right to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against the Defendant and the Released Parties about the legal issues resolved by this Settlement. In addition, you will not receive a payment from this Settlement.

## GETTING MORE INFORMATION

### 22. How do I get more information?

This Notice summarizes the proposed Settlement. Complete details are provided in the Settlement Agreement. The Settlement Agreement and other related documents are available at the Settlement Website, [Website URL].

If you have additional questions, you may contact the Settlement Administrator by email, phone, or mail:

Email: [Email Address]

Toll-Free: 1-XXX-XXX-XXXX

Mail: **＿＿＿＿＿＿**_Settlement_, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103

Publicly filed documents can also be obtained by visiting the office of the Clerk of the United States District Court for the Northern District of Illinois or by reviewing the Court's online docket.

**PLEASE DO NOT CONTACT THE COURT OR CHURCH & DWIGHT, CO., INC.**

# EXHIBIT C

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*Evans et al. v. Church & Dwight Co., Inc.*
Case No. 1:22-cv-06301
**Claim Form**

</td><td>

**C&D**

</td></tr>
</table>

### CLAIM FORM INSTRUCTIONS

1. You may submit your Claim Form online at [WEBSITE URL] or by U.S. Mail to the following address: _____ *Settlement*, c/o Settlement Administrator, 1650 Arch Street, Suite 2210, Philadelphia, PA 19103. Please make sure to include the completed and signed Claim Form and all supporting materials in one envelope.

2. You must complete the entire Claim Form. Please type or write your responses legibly.

3. Please keep a copy of your Claim Form and any supporting materials you submit. Do not submit your only copy of the supporting documents. Materials submitted will not be returned. Copies of documentation submitted in support of your Claim should be clear and legible.

4. If your Claim Form is incomplete or missing information, the Settlement Administrator may contact you for additional information. If you do not respond, the Settlement Administrator will be unable to process your claim, and you will waive your right to receive money under the Settlement.

5. If you have any questions, please contact the Settlement Administrator by email at [EMAIL ADDRESS] or by mail at the address listed above.

6. Bare™ Product(s)" means Batiste™ Bare™ and Clean & Light Bare™ dry shampoo product or products marketed by Church & Dwight Co., Inc. ("C&D").

7. Batiste™ Product(s)" means all Batiste™ dry shampoo products marketed by C&D.

8. You must notify the Settlement Administrator if your address or payment information changes. If you do not, you may not receive your Cash Payment or Product Voucher.

9. **DEADLINE -- Your claim must be submitted online by [DEADLINE DATE]. Claim Forms submitted by mail must be mailed to the Settlement Administrator postmarked no later than [DEADLINE DATE].**

1

137979767v1

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*Evans et al. v. Church & Dwight Co., Inc.*
Case No. 1:22-cv-06301

**Claim Form**

</td><td>

**C&D**

</td></tr>
</table>

## I. NAME AND CONTACT INFORMATION

Provide your name and contact information below. You must notify the Settlement Administrator if your contact information changes after you submit this form.

|  |  |
|---|---|
| **First Name** | **Last Name** |

**Street Address**

| | | |
|---|---|---|
| **City** | **State** | **Zip Code** |

**Email Address**

## II. BARE™ PRODUCT PURCHASE INFORMATION

*Complete this section if you purchased one or more **Bare™** products in the United States prior to* _____.

Select **one** of the following options:

☐ **I am enclosing proof of purchase of one or more Bare™ Products.**

Please provide the amount paid for Bare™ Products for which you are providing proof of purchase:  ☐

☐ **I do not have proof of purchase but attest to having purchased one or more Bare™ Products.**

Enter the number of Bare™ Products you attest to having purchased (maximum of 5):  ☐

Note: Cash Payments may be increased or decreased on a *pro rata* basis depending on the total amount of dollars calculated for Valid Claims in comparison to the $2,500,000.00 Settlement Fund.

2

<table>
<tr><td>

**Your claim form must be submitted online or postmarked by: [DEADLINE]**

</td><td>

**United States District Court**
**Northern District of Illinois**

*Evans et al. v. Church & Dwight Co., Inc.*
Case No. 1:22-cv-06301

**Claim Form**

</td><td>

**C&D**

</td></tr>
</table>

Please select **one** of the following Cash Payment options:

☐ **Prepaid Mastercard** *(Requires an email address)*

☐ **PayPal** *(Requires the email address associated with your PayPal account)*

☐ **Venmo** *(Requires the mobile number associated with your Venmo account)*

☐ **Zelle –** *(Requires the email address or mobile number associated with your Zelle account)*

Enter the email address or mobile number required for the payment option you selected: _____

---

### III. BATISTE™ PRODUCT PURCHASE INFORMATION

*Complete this section if you purchased one or more **Batiste™ products** **(other than Bare™ products)** in the United States prior to _____. Valid Claims for Batiste™ products are entitled to receive a Product Voucher.*

Enter the number of Batiste™ Products (other than Bare™ products) you attest to having purchased (maximum of 5 products): [_____]

Enter the email address to receive your Product Voucher(s): _____
x _____

---

### IV. VERIFICATION AND ATTESTATION UNDER PENALTY OF PERJURY

By signing below and submitting this Claim Form, I hereby swear under penalty of perjury that all the information provided in this Claim Form, including supporting documentation, is true and correct, and that nobody has submitted another claim form in connection with this Settlement on my behalf.

I understand that by signing and submitting this Claim Form, the Settlement Administrator may request additional information to validate my Claim Form, and that failure to provide requested information may result in the denial of my Claim Form.

_____          Date: _____
Your signature                                                        MM          DD          YYYY

_____
Your name

3

# EXHIBIT D

[Batiste Logo]

| Evans, et al. v. Church & Dwight Co., Inc. Class Action Settlement | $X Product Voucher |
|---|---|

**Issue Date:** [DATE]                                          **Voucher Serial Number:** [Voucher Number]

You are receiving this Product Voucher because you submitted a Valid Claim in the Evans, et al. v. Church & Dwight Co., Inc. Settlement.

This Product Voucher may be redeemed in-store.
This Service Voucher is not redeemable for cash and is non-transferrable. **This Product Voucher will expire one year from issuance.** This Product Voucher may be used only one time and is subject to fraud prevention measures.

**Redemption Code:** XXXXXXXX