**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EMILY EVANS and CAITLIN HASSETT, on behalf of themselves and all others similarly situated, | Case No.: 22-CV-6301 |
| Plaintiffs, | Judge Virginia M. Kendall |
| v. | |
| CHURCH & DWIGHT CO., INC., | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT, AND APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

This Action[1] arises from C&D's sale of its Batiste™ brand dry shampoo products which Plaintiffs allege were deceptively marketed and sold to consumers containing harmful levels of a chemical called benzene. Defendants dispute these allegations. Early in the litigation, the Parties decided their resources would be best spent negotiating a resolution. As the Court is aware from the Motion for Preliminary Approval filed on May 25, 2023, those negotiations resulted in a class settlement. The Settlement—which consists of $2,500,000.00 in cash, $600,000.00 in Product Vouchers, and substantial injunctive relief—is an extremely fair and reasonable result for the Settlement Class.

The Parties now seek Final Approval of the Settlement, Service Awards to the Class Representatives, and an award of attorneys' fees and costs incurred for prosecuting the Action. In support of Plaintiffs' Motion for Final Approval, Plaintiffs and Class Counsel submit this

---

[1] All capitalized terms herein shall have the same meanings as those defined in the Settlement Agreement, attached as ***Exhibit 1***.

Memorandum of Law, a Joint Declaration of Settlement Class Counsel, attached as ***Exhibit 2*** ("JD."), and a Declaration of the Settlement Administrator Steven Weisbrot, attached as ***Exhibit 3*** ("AD."). The Parties respectfully request that the Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes only the Settlement Class, pursuant to Fed. R. Civ. P. 23(b)(3) and (e); (3) re-appoint Plaintiffs as Class Representatives; (4) re-appoint as Class Counsel the attorneys previously appointed in the Preliminary Approval Order; (5) approve the requested Service Awards; (6) award Class Counsel attorneys' fees and costs; and (7) enter Final Judgment dismissing the Action with prejudice. Based on controlling Seventh Circuit law, and supporting facts, the Settlement is fair, reasonable, and adequate and should therefore be finally approved.

## I.  INTRODUCTION

On October 31, 2022, a third-party laboratory submitted a citizens' petition to the FDA in which it reported that it had purportedly detected higher levels of benzene in specific batches of dry shampoo products sold by various manufacturers. Among those products were certain Batiste™ Products sold by C&D. Plaintiffs allege C&D failed to adequately disclose to consumers this alleged presence of benzene in the Batiste™ Products, asserting claims for violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA") 815 ILCS 505/1, et seq., fraud, unjust enrichment, and violations of the state consumer fraud acts.

In response to the report, Plaintiffs filed this Action alleging that benzene is a carcinogenic impurity that has been linked to leukemia and other cancers and that C&D made false and misleading representations and omissions about the qualities and ingredients of the Products, including the failure to disclose the presence of benzene, which Plaintiffs claim would render the products adulterated and misbranded. Plaintiffs further alleged that C&D's failure to disclose is

material to consumers who purchased the Products. C&D filed a motion to dismiss (which was fully briefed by the Parties) in which it disputed Plaintiffs' allegations, and asserted, *inter alia*, that Plaintiffs lack Article III standing because Plaintiffs failed to allege the presence of any dangerous levels of benzene in the Products, no reasonable consumer would be deceived, Plaintiffs' claims are preempted by federal law, and the action should be stayed under the doctrine of primary jurisdiction. While that motion was pending, the Parties mediated with a respected mediator, Hon. Steven M. Gold (Ret.). Following mediation, and additional settlement discussions, the Parties agreed to resolve the Action to avoid the risks and uncertainties of continued litigation.

The Parties filed the Settlement Agreement, and the Court entered a Preliminary Approval Order, directing that Notice be provided to the Settlement Class and establishing deadlines for filing the Motion for Final Approval and for Settlement Class members to opt-out or object.

## II.    SUMMARY OF THE LITIGATION

On November 10, 2022, Plaintiff, Emily Evans, filed this Action against C&D in the United States District Court for the Northern District of Illinois. [ECF No. 1]. Thereafter, several other similar lawsuits were filed against C&D related to the same subject matter. Thereafter, on or about December 19, 2022, C&D filed a motion with the Joint Panel for Multidistrict Litigation to centralize the similar actions for coordinated pretrial discovery and proceedings pursuant to 28 U.S.C. § 1407. As a result of the motion, plaintiffs' counsel in each of the actions conferred and agreed to pursue their claims in a single action in this District.

On February 1, 2023, Plaintiffs, Emily Evans and Caitlin Hassett, filed the First Amended Complaint in this Action, asserting claims on behalf of themselves and a nationwide class, an Illinois subclass, and a consumer fraud multi-state subclass against C&D. [ECF No. 27]. Plaintiffs sought equitable relief and damages and restitution for: (i) violation of the ICFA, 815 ILCS 505/1,

et seq.; (ii) fraud; (iii) unjust enrichment, and (iv) violations of the state consumer fraud acts.

On February 10, 2023, the Parties attended a status hearing before the Honorable Virginia M. Kendall, at which time the Court ordered a briefing schedule for C&D's anticipated motion to dismiss and stayed discovery pending a ruling on the motion to dismiss. [ECF No. 39]. C&D filed its Motion to Dismiss on February 15, 2023 [ECF Nos. 41-42], which was fully briefed by both Parties, including the filing of notices of supplemental authority. [ECF Nos. 47, 49].

Thereafter, the Parties began discussing settlement and scheduled an April 10, 2023, mediation. JD. ¶21. In advance, the Parties exchanged informal discovery regarding sales of the Batiste™ Product and testing provided by C&D showing no detectible levels of Benzene in the Batiste™ Products. *Id.* The Parties also engaged in extensive discussions regarding C&D's business model and its sales figures to understand the scope of potential damages if Plaintiffs were to prevail. *Id.* Additionally, the Parties drafted confidential mediation briefs that were submitted to Judge Gold. *Id.*

On April 10, 2023, the Parties engaged in a full-day mediation with Hon. Steven M. Gold (Ret.) of JAMS, an experienced class action mediator. *Id.* As a result of the information exchanged by the Parties in advance of mediation, Plaintiffs and Class Counsel entered settlement negotiations with substantial information about the merits of the legal claims and factual allegations. *Id.* ¶22. Plaintiffs and Class Counsel had the ability to review key documents and information in this matter, which allowed them to confidently evaluate the strengths and weaknesses of Plaintiffs' claims and prospects for success at class certification, summary judgment, and trial. *Id.* ¶30. During the mediation, the Parties thoroughly discussed and vetted the facts and law as Judge Gold engaged in a critical analysis of the Parties' arguments. *Id.* ¶23. After a full day of mediation, the Parties reached a settlement in principle, including the monetary

and non-monetary relief, the settlement structure, and other key details. *Id.* ¶24. In subsequent weeks, the Parties continued to negotiate the finer points of the Agreement, including the terms of the Releases, the Settlement Administrator and its respective duties, the Notice Program, and the proposed schedule for Notice and approval. During this process, the Parties worked diligently to finalize the terms of the Agreement and ancillary documents, which was completed in May, 2023. *Id.* ¶25. The Agreement was executed on May 25, 2023. *Id.* at ¶27.

On May 25, 2023, Plaintiffs and Class Counsel filed their Motion for Preliminary Approval. [ECF No. 59-60] and May 30, 2023, the Court entered the Preliminary Approval Order that, *inter alia*, directed that Notice be given to the Settlement Class and established deadlines for the filing of the Motion for Final Approval, the timely submission of objections or opt-outs, and set a date for the Final Approval Hearing. [ECF No. 62].

## III.    SUMMARY OF THE SETTLEMENT TERMS

The material Settlement terms, detailed in the Agreement are the following:

### A.    The Settlement Class

The Settlement Class is defined as:

All persons and entities in the United States who during the Class Period purchased one or more of the Bare™ Products or Batiste™ Products for personal, family, or household use and not for resale. Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of C&D, or its subsidiaries and affiliated companies; (b) persons or entities who purchased the Bare™ Products or Batiste™ Products primarily for the purposes of resale to consumers or other resellers; (c) governmental entities; and (d) the Court, the Court's immediate family, and Court staff.

Agreement ¶ 76.

### B.    Monetary & Non-Monetary Relief to the Settlement Class

***Monetary Relief.*** The Settlement provides for a Cash Settlement Fund in the amount of $2,500,000.00, which will used to pay: (1) Cash Payments to Settlement Class Members who

purchased Bare™ Products; (2) Service Awards to Class Representatives; (3) attorneys' fees and costs to Class Counsel; and (4) all Settlement Administration Costs. *Id.* ¶ 86(a). In addition to the Cash Settlement Fund, the Settlement also provides for a Voucher Settlement Program with $600,000.00 worth of Product Vouchers that will be used to compensate Settlement Class Members who purchased Batiste™ Products other than Bare™ Products. *Id.* ¶86(b).

To qualify for a Cash Payment, a Claimant must submit a Claim Form no later than the Claim Form Deadline, including Proof of Purchase of a Bare™ Product or, if the Claimant does not have Proof of Purchase, the Claimant may attest under oath that he or she purchased a Bare™ Product. *Id.* ¶86(c)(i). If a Claimant includes Proof of Purchase with the Claim Form, the Claimant shall receive a full refund of the purchase price for as many Bare™ Products for which Proof of Purchase is provided. *Id.* ¶86(c)(ii). If the Claimant does not have Proof of Purchase and attests to purchasing a Bare™ Product(s), the Claimant will receive $2.00 for each Bare™ Product purchased, for a maximum of five Bare™ Products, or $10.00. *Id.* ¶86(c)(iii). There may be a *pro rata* increase or reduction to each Settlement Class Member's actual amount of their Cash Payment, depending upon the total amount of dollars calculated for Valid Claims in comparison to the Net Cash Settlement Fund.

To qualify for a Product Voucher, a Claimant will be required to attest to purchasing a Batiste™ Product other than one of the Bare™ Products. Claimants entitled to a Product Voucher shall be entitled to Product Vouchers valued at $2.00 per product, for a maximum of 5 products or $10.00, in the form of a digital coupon that may be redeemed in store in multiple retail locations. Product Vouchers may be used for any Batiste™ Products, excluding the Bare™ Products. Product Vouchers shall not be transferrable and shall expire one year from the date of issuance. The email or cover letter accompanying the Product Voucher and the Product Voucher provided to Settlement

Class Members shall conspicuously state the Product Voucher's expiration date. *Id.* ¶86(d), (g). There may be a *pro rata* increase or decrease to each Settlement Class Member's actual amount of their Product Voucher, depending upon the total amount of dollars calculated for Valid Claims in comparison to the $600,000.00 worth of Product Vouchers in the Voucher Settlement Program.

 ***Non-Monetary Relief.*** For a period of at least 18 months, C&D commits to obtain written certification from its Supplier(s) that the Supplier(s) has tested tankers of propellant intended for use in the manufacture of Products for sale in the United States and that the Supplier(s) has confirmed that such tankers contain no more than 2 parts per million of benzene. If Supplier(s) finds benzene above 2 parts per million in a tanker of propellant, C&D shall not use propellant from such tanker in the manufacture of the Products intended for sale in the United States. *Id.* ¶87.

 **C.** **The Notice Program**

 Notice was completed in compliance with the Court's Preliminary Approval Order. JD. ¶29; AD. ¶¶8-10. The Notice Program, which commenced on June 19, 2023, and concluded on August 17, 2023, consisted of Publication Notice throughout the internet and social media, a Settlement Website to obtain information and to electronically file Claims, and a toll-free telephone number for Settlement Class members to obtain information or to request a Long Form Notice. Agreement ¶¶ 57, 68, 92.

 ***Media Notice Campaign.*** From June 19, 2023, to August 17, 2023, the Settlement Administrator ran a robust and far-reaching media campaign. *Id.* at ¶10. The campaign consisted of internet banner advertisement notice, social media notice via Facebook and Instagram, and a paid search campaign via Google. *Id.* As of August 17, 2023, the media notice has resulted in approximately 11,947,055 impressions. *Id.*

 ***Settlement Website.*** On June 19, 2023, the Settlement Administrator established the

7

Settlement Website, www.CD-Settlement.com, where Settlement Class members have been able to file a Claim directly on the website or download and print the Claim Form to be completed and mailed via the USPS. AD. ¶8. The website also contains important information about the Settlement, relevant case documents, and all significant deadlines, and allows for Settlement Class members to email the Settlement Administrator with any additional questions. *Id.* As of September 1, 2023, the Settlement Website has received 650,655 website visits by 627,852 unique users, totaling 874,777 page views. *Id.*

*Toll-Free Number.* On June 19, 2023, the Settlement toll free number (1-888-484-2885) became active. *Id.* at ¶9. The number utilizes an interactive voice response system to provide Settlement Class members with responses to frequently asked questions and essential information regarding the Settlement. *Id.* The number is accessible 24 hours a day, 7 days a week. As of September 1, 2023, the Settlement Administrator received 27 calls totaling 112 minutes. *Id.*

### D. Claims Process, Settlement Class Member Payments, Distribution, and Residual Funds

Settlement Class Members will receive a Cash Payment and/or a Product Voucher, on a claims-made basis. *See* Agreement ¶¶37, 86. The Claim Form Deadline is November 15, 2023. AD. ¶14. As of August 24, 2023, the Settlement Administrator has received 987,436 Claim Form submissions which remain subject to final audits, including the full assessment of each Claim's validity and a review for duplicate submissions. *Id.* The Settlement Administrator shall collect, review, and address each Claim Form received to determine whether the Claim Form meets the requirements set forth in the Settlement. *Id.* at ¶101.

No later than 75 days after Final Approval or 15 days after the Effective Date, whichever is later, the Settlement Administrator shall distribute the Cash Payments and email the Product Vouchers. *Id.* at ¶109.

Cash Payments will be distributed by paper check unless a Settlement Class Member elects to receive payment by electronic means. *Id.* at ¶92(xi). Settlement Class Members receiving payment by check shall have 180 days to negotiate the check. *Id.* ¶116. Should there be any funds remaining in the Cash Settlement Fund thereafter (resulting from uncashed or undeliverable checks), the Parties will distribute to the funds to *cy pres* recipient, The American Red Cross, upon approval by the Court. *Id.*

### E.  Opt-Out and Objection Procedures

The opt-out and objection deadline is September 16, 2023. As of August 30, 2023, out of hundreds of thousands of members of the Settlement Class, only two have opted-out and none have objected. AD. ¶¶15, 16. These statistics will be updated for the Court in a supplemental declaration filed prior to Final Approval.

### F.  Release of Claims

In exchange for the benefits conferred by the Settlement, the Releasing Parties will be deemed to have released the Released Parties from the Released Claims. The detailed release language is found in Section XII of the Agreement.

### G.  Plaintiffs' Service Awards

Class Counsel are seeking Service Awards in the amount of $2,500.00 each (for a total of $5,000.00), in recognition of the time and effort the Class Representatives expended in pursuing this Action, and in fulfilling their obligations and responsibilities as Class Representatives. Agreement ¶111. If approved by the Court, the Service Awards will be paid from the Cash Settlement Fund and will be in addition to any other relief to which the Class Representatives are entitled as Settlement Class Members. *Id.* at ¶73, 86(a), 111.

### H. Attorneys' Fees and Costs

Class Counsel is seeking attorneys' fees of 33.33% of the Cash Settlement Fund, plus reimbursement of costs. *Id.* at ¶112. The Parties negotiated and reached an agreement regarding attorneys' fees and costs only after reaching agreement on all other material terms of the Settlement. JD. ¶26. The Notice Program advised the Settlement Class of Class Counsel's intention to seek up to 33.33% in attorneys' and reimbursement of costs, and as of the date of this Motion for Final Approval, not a single Settlement Class member has raised an objection. JD. ¶48. If approved by the Court, Class Counsel's attorneys' fees and costs will be paid from the Cash Settlement Fund. Agreement at ¶112.

## IV. CLASS CERTIFICATION IS APPROPRIATE

Federal Rule of Civil Procedure 23 states the "claims, issues, or defenses *of a certified class* may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed R. Civ. P. 23(e) (emphasis added). Accordingly, before approving the Settlement, this Court must certify the Settlement Class. A district court may certify a case for class-action treatment if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b). *See Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 493 (7th Cir. 2012). The Seventh Circuit imposes one additional requirement: "the class must be 'identifiable as a class,'" meaning the class definition "must be 'definite enough that the class can be ascertained.'" *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190, 194 (N.D. Ill. 2018) (quoting *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006)). This Court has already preliminarily certified the Settlement Class. As demonstrated below, that decision should be made final.

## A.      The Requirements of 23(a) are Satisfied.

Each of the requirements of Federal Rule of Civil Procedure 23(a) is met here.

*Numerosity.* Numerosity is satisfied because there are hundreds of Settlement Class members and joinder of all is impracticable. *See* AD. ¶14; Fed. R. Civ. P. 23(a)(1).

*Commonality.* Commonality requires "questions of law or fact common to the class." Fed R. Civ. P. 23(a)(2). A question is common to the class if it generates a common answer, such that determination of the question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The common questions "need not address every aspect of the plaintiffs' claims," but they "must 'drive the resolution of the litigation.'" *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 553 (7th Cir. 2016) (quoting *Dukes*, 564 U.S. at 350). For purposes of Rule 23(a)(2), "[e]ven a single [common] question" will suffice. *Dukes*, 564 U.S. at 359. Here, commonality is readily satisfied by multiple common questions of law and fact for the Settlement Class members, including whether C&D's failure to disclose the Products contained benzene was likely to deceive reasonable consumers. Resolution of this question would require evaluation of its merits under a single objective standard.

*Typicality.* Typicality is satisfied where claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members" and has "the same legal theory" at its core. *Lacy v. Cook Cty.*, 897 F.3d 847, 866 (7th Cir. 2018) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). Here, Plaintiffs, like all Settlement Class members, purchased the Products during the Class Period and suffered damages due to C&D's alleged material misstatements and omissions. Thus, the Settlement Class meets the typicality requirement. *See* Fed. R. Civ. P. 23(a)(3).

*Adequacy.* To determine adequacy, courts consider two factors: "(1) the adequacy of the

11

named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.,* 649 F.3d 583, 592 (7th Cir. 2011), *as modified* (Sept. 22, 2011). A named plaintiff will not serve as an adequate representative of a proposed class when her claims are "antagonistic or conflicting" with those of the other class members, *Rosario*, 963 F.2d at 1018, or when she remains "subject to a defense that would not defeat unnamed class members." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011). The adequacy of class counsel turns on counsel's qualifications, experience, and ability to conduct the litigation. *See Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (citing *Rosario*, 963 F.2d at 1018). Here, Plaintiffs' interests are coextensive with those of the Settlement Class. Like all Settlement Class members, Plaintiffs have claims against C&D in connection with their purchase of Products during the Class Period and were allegedly injured by C&D's allegedly wrongful acts. Proof of Plaintiffs' claims would necessarily involve adjudicating the same issues of law and fact as the claims of the Settlement Class as a whole. Thus, Plaintiffs and Settlement Class members have the same interests in recovering damages allegedly caused by C&D's wrongful conduct. Further, Plaintiffs and the Settlement Class are represented by qualified and competent counsel, who this Court preliminarily appointed as Class Counsel. Each firm is a leader in the class action field, which experience has helped them to in this Action. Class Counsel has devoted substantial time and resources and will continue to do so. *See* JD, Ex. A-F.

**B.    The Requirements of Rule 23(b)(3) are Satisfied.**

In addition to showing the requirements of Rule 23(a) are satisfied, Plaintiffs must also show "the questions of law or fact common to the class members predominate over any questions affecting only individual members," and that "a class action is superior over other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

*Predominance.* A class satisfies the predominance requirement when "common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir 2012) (cleaned up). In deciding whether to certify a settlement-only class, "a district court *need not inquire* whether the case, if tried, would present intractable management problems," an inquiry typically necessary to satisfy Rule 23(b)(3)'s predominance requirement. *Douglas v. W. Union Co.*, 328 F.R.D. 204, 211 (N.D. Ill. 2018) (emphasis added) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Accordingly, individualized issues that may bar certification for adjudication purposes will not necessarily bar certification for settlement. In fact, courts "regularly certify settlement classes that might not have been certifiable for trial purposes because of manageability concerns." *Id.* Here, Plaintiffs' claims involve common questions of law and fact because the same set of operative facts applies to the Settlement Class. Specifically, common questions include whether C&D omitted or failed to disclose material information to Plaintiffs and the Settlement Class regarding benzene in the Products and whether the Settlement Class was harmed by the misrepresentations. Whether C&D engaged in unfair or deceptive practices would entail common proof. Thus, predominance is met here.

*Superiority.* The requirement of superiority is met here because, given the relatively modest amounts Settlement Class members would stand to recover in individual actions, it is improbable that many "would possess the initiative to litigate individually." *See Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974); *cf. Amchem Prods., Inc.*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting

his or her rights." (cleaned up)). A class action is the superior method for the fair and efficient adjudication of these claims, which are shared by hundreds of thousands of consumers nationwide. Resolution of all Settlement Class members' claims in a single proceeding promotes judicial efficiency and avoids inconsistent decisions. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23"). Further, it is unlikely any Settlement Class member would be willing or able to pursue relief on an individual basis.

### C. Definiteness and Ascertainability

To satisfy the requirement of definiteness and ascertainability, a class must "be defined clearly and based on objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015). Courts are concerned most about "the adequacy of the class definition itself," not "whether, given an adequate class definition, it would be difficult to identify particular members of the class." *Id.* A class definition that "identifies a particular group of individuals...harmed in a particular way...during a specific period in particular areas" indicates a definite and ascertainable class. *Id.* at 660-61. Further, a class that requires its members to identify themselves through affidavits or claim forms, like the one used here, satisfies the ascertainability standard. *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 417-18 (N.D. Ill. 2012) (finding class ascertainable where the only way to identify certain class members was through the submission of affidavits in which they claimed membership). The Settlement Class defined here meets these requirements.

### D. The Notice Program Satisfied the Requirements of Rule 23 and Due Process.

The Court has already determined the Notice Program is the best notice practicable under

14

the circumstances and satisfies the requirement of Rule 23 of the Federal Rules of Civil Procedure, due process, and all other applicable law and rules. [ECF No. 62 ¶11]. District courts have found the contents of a settlement notice "sufficient" if the notice "informs the class members of 'the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, and that any class member may appear and be heard at the hearing.'" *Lucas v. Vee Pak, Inc.*, 2017 WL 6733688, at *15 (N.D. Ill. Dec. 20, 2017). The Notice utilized here "clearly and concisely state in plain, easily understood language," the: (1) nature of the action; (2) definition of the certified class; (3) the class claims, issues, or defenses; (4) that a class member may appear through counsel; (5) that a class member will be excluded at their request; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B). Also, given the broad reach of the Notice and the comprehensive information provided to the Settlement Class, the requirements of due process and Rule 23 are easily met. AD. ¶¶12, 13, 17.

## V. THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

As the Seventh Circuit has recognized, federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters, where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotations omitted), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); 4 NEWBERG ON CLASS

ACTIONS § 11:41 (4th ed. 2002) (citing cases). Against that backdrop, the Seventh Circuit has identified five factors to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Rule 23(e) requires consideration of several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Plaintiffs respectfully submit each factor supports the conclusion that the Settlement is fundamentally fair, adequate, and reasonable.

### A.        Strength of the Case for Plaintiffs Balanced Against Settlement

"The most important factor relevant to the fairness of a class action settlement is...the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc.*, 463 F.3d at 653 (internal quotation marks omitted). To determine the strength of a settling class action plaintiff's case, a court must determine the "net expected value of continued litigation to the class." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). Essentially, a court must weigh the value of the proposed settlement against the total amount the class could recover, discounted by the weaknesses and risks inherent in the class's claims. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 578 (N.D. Ill. 2011). The Seventh Circuit has recognized that valuing hypothetical continued litigation is necessarily speculative and therefore an inexact science. A court is expected only to estimate and come to a "ballpark valuation." *Reynolds*, 288 F.3d at 285.

Further, "the *Synfuel/Reynolds* evaluation of potential outcomes need not always be quantified, particularly where there are other reliable indicators that the settlement reasonably reflects the merits of the case." *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 285 (7th Cir. 2017) (citing *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014)). In *Wong*, for instance, the court affirmed the district court's decision to approve a class action settlement without attempting to quantify the net expected value of continued litigation in the absence of any "suspicious circumstances." *See Wong*, 773 F.3d at 864. Instead, the court observed the settlement "was reached through extensive arms'-length negotiations with an experienced third-party mediator," during which "the parties' positions on liability and damages were extensively briefed and debated"; the defendant "was prepared to vigorously contest the lawsuit, having raised potentially valid defenses"; its motion to dismiss had been "fully briefed and argued"; and the lead plaintiff "had received access to extensive public documents," although "formal discovery had not yet commenced." *Id.* The court noted too that further litigation "almost certainly would have involved complex and lengthy discovery and expert testimony" and the attorneys who negotiated the settlement were "highly experienced." *Id.* The same indicators of a reasonable settlement recognized in *Wong* are present here, including arms'-length negotiations, mediated by a reputable former federal judge. The Parties fully briefed Defendant's motion to dismiss, setting forth their respective positions. Plaintiffs also reviewed substantial confirmatory discovery, despite formal discovery not having yet commenced.

While Plaintiffs believe their claims against C&D have merit, they are pragmatic and understand the legal uncertainties associated with continued litigation may pose substantial risk of non-recovery to the Settlement Class, particularly given that the testing that C&D provided to Class Counsel in connection with the mediation allegedly showing no detectible levels of benzene

in the Batiste™ Products. *See In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strength of plaintiffs' case, legal uncertainties at the time of settlement favor approval."). Even if Plaintiffs survived a motion to dismiss and motion for summary judgment, C&D would certainly oppose class certification. Denial of class certification would also result in no recovery at all for the Settlement Class. Despite these material risks, Plaintiffs achieved an excellent result for the Settlement Class. The proposed Settlement provides immediate monetary relief and injunctive to Settlement Class Members, while avoiding the significant expenses, delays, and risks associated with litigation. Accordingly, "[i]n light of the potential difficulties at class certification and on the merits…, the time and extent of protracted litigation, and the potential of recovering nothing, the relief provided to class members in the Settlement Agreement represents a reasonable compromise." *Wright v. Nationstar Mortg. LLC*, 2016 WL 4505159, at *10 (N.D. Ill. Aug. 29, 2016).

### B.    Complexity, Length and Expense of Further Litigation

"Settlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte*, 805 F. Supp. 2d at 586. Proceeding to trial likely would take years and entail extensive fact and expert discovery and motion practice, including, in all probability, a contested motion for class certification, motions for summary judgment, and *Daubert* motions. If Plaintiffs survived these early procedural hurdles and this Action were to continue on the merits, it would be lengthy and expensive. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and Class Counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The immediacy and certainty

of a recovery, when balanced against the significant costs, risks, and delay of proceeding with litigation, weigh in favor of settlement.

### C.    Opposition to the Settlement and Reaction of Class Members

As of the date of this Motion for Final Approval, there are only two opt-outs and no objections. The lack of opposition is a reflection of the overwhelming support for the Settlement. *See, e.g., In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (finding opt-out and objection rate of 0.0032% low enough to support settlement); *In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F.Supp.2d 935, 965 (N.D. Ill. 2011) (same).

### D.    Opinion of Competent Counsel

As discussed earlier herein, Class Counsel are highly experienced class action attorneys and have handled several other benzene-related cases. Bringing this experience and knowledge to bear, Class Counsel are confident the Settlement is in the best interest of the Settlement Class. *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 812 (E.D. Wis. 2009) (that "counsel endorses the settlement and it was achieved after arms-length negotiations facilitated by a mediator . . . suggest that the settlement is fair and merits final approval."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the . . . strong endorsement of [this] settlement" by a "well-respected" attorney).

### E.    Stage of Proceedings and Amount of Discovery Completed

During the pendency of this Action, the Parties were able to assess the relative strengths and weaknesses of their respective positions and compare the benefits of the Settlement to further litigation. [ECF No. 62 ¶7]. The Parties exchanged information including, but not limited to, results

of product testing, sales information, supplier and distributor information, and other key metrics to assist in the evaluation of liability and damages. JD. ¶¶ 21, 33. This "discovery was sufficient for effective representation, and [] formal discovery would have only taken more time and resulted in the expenditure of additional funds on both sides without achieving a more attractive settlement or any other appreciable benefit." *Swift v. Direct Buy, Inc.*, Nos. 11-401, 11-415, 11-417, 12-45, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013).

### F. Remaining Rule 23(e)(2) Factors

Finally, consideration of the factors set forth in Rule 23(e) likewise supports Final Approval of the Settlement. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as whether the relief provided to the Settlement Class is adequate—are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, Plaintiffs were, throughout this matter, committed to acting in the best interests of Settlement Class members. They also reviewed the pleadings, communicated with Class Counsel regarding case strategy, and made all necessary decisions required of them in the best interests of Settlement Class members.

In addition, there can be no doubt the Settlement was negotiated at arm's length. Indeed,

the Parties contentiously litigated this Action before entering into mediated settlement discussions, reaching a settlement only after engaging in a formal mediation session with Judge Gold. JD. ¶21. *See Wong*, 773 F.3d at 864 (affirming approval of class action settlement and noting: "Finally, and importantly, the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated."); *see also In re Sw. Airlines Voucher Litig.*, at *8 (finding "no hint of collusion" where parties litigated vigorously before engaging in mediation with an experienced mediator).

Separately, Rule 23(e)(2)(D) requires this Court to confirm the Settlement treats all class members equitably. According to the Advisory Committee's Note, courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory committee's note (2018). To that end, all Settlement Class Members have the same legal claims, and the Release affects each Settlement Class Member in the same way, as everyone will release the same Released Claims. Thus, each Settlement Class Member will be treated equitably.

## VI.    APPLICATION FOR SERVICE AWARD

Class Counsel respectfully request the Court grant Service Awards in the amount of $2,500.00 each for the Class Representatives' efforts. Service awards are routinely awarded and encourage individual plaintiffs to undertake the responsibility of representative lawsuits. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (recognizing that "because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit"); *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001) [hereinafter, "*Synthroid I*"] ("Incentive awards are justified when necessary to

induce individuals to become named representatives."). Without Plaintiffs serving as Class Representatives, the Settlement Class would not have been able to recover anything. *See In re Iowa Ready-Mix Concrete Antitrust Litig.*, 2011 WL 5547159, at *5 (N.D. Iowa Nov. 9, 2011) ("[E]ach . . . plaintiff has provided invaluable assistance and demonstrated an ongoing commitment to protecting the interests of class members.").

Plaintiffs have been actively engaged in this Action and were essential to the success achieved. JD. ¶41. Among other things, they provided information to Class Counsel, reviewed pleadings, and reviewed and approved the Settlement. *Id.* Plaintiffs were willing to sit for a deposition and to perform duties as the Court may have required if the case continued. *Id.* The Settlement would not have been possible without the effort and commitment of Plaintiffs, who sacrificed time and put their name on the line for the sake of the Settlement Class. *Id.*

Courts regularly award service awards greater than $2,500.00. *See, e.g., Craftwood Lumber Co. v. Interline Brands, Inc.*, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (approving $25,000.00 service award); *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, at *17 (N.D. Ill. Feb. 28, 2012) (approving $25,000.00 service awards to each of seven plaintiffs); *Cook*, 142 F.3d at 1016 (approving $25,000.00 service award); *see also Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015) (awarding $5,000.00 where case did not proceed past earliest discovery stages). Thus, the requested Service Awards of 2,500.00 to each Class Representative are reasonable and should be approved.

## VII.  APPLICATION FOR ATTORNEYS' FEES AND COSTS

Class Counsel respectfully request attorneys' fees in the amount of $833,333.33, which is equal to 33.33% of the Cash Settlement Fund, and $12,927.90 for costs. The Parties negotiated and reached an agreement regarding attorneys' fees and costs only after reaching agreement on all

other material Settlement terms. JD. ¶26. As explained below, the requested fee award is in line with the market rate for similar attorney services in this Circuit and fairly reflects the results achieved in this Settlement. Similarly, the requested costs were all reasonable and necessarily incurred. Costs are regularly awarded in this Circuit.

### A. The Percentage of the Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Action.

Rule 23(h) provides that "[i]n a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Under the "common fund" or "common benefit" doctrine, "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This rule is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co.*, 444 U.S. at 478. *See also In re Sw. Airlines Voucher Litig.*, 898 F.3d at 745 ("Fee awards for class counsel are part of a constructive common fund because they are a benefit to the class"); *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014) ("value of the settlement" is "defined as the sum of the awards to the class and to its lawyers.").

In the Seventh Circuit, courts determine class action attorneys' fees by "[d]oing their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Synthroid I*, 264 F.3d 712, 718 (7th Cir. 2001). Courts have discretion to determine the "market rate" based on either a lodestar or percentage of the fund method. *See Leung v. XPO Logistics*, 326 F.R.D. 185, 204 (N.D. Ill. 2018). However, the percentage method is employed by the vast majority of courts in the Seventh Circuit. *T.K. Through Leshore v. Bytedance Tech. Co., Ltd.*, 2022 WL 888943, at *24 (N.D. Ill.

23

Mar. 25, 2022) (quoting *Hale v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 6606079, at *10 (S.D. Ill. Sept. 16, 2018)); *Chambers v. Together Credit Union*, 2021 WL 1948452, at *1 (S.D. Ill. May 14, 2021) (same); *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *2 (S.D. Ill. Jan. 31, 2014) ("When determining a reasonable fee, the Seventh Circuit Court of Appeals uses the percentage basis rather than a lodestar or other basis.").

Not only is it common practice to use the percentage of the fund approach generally, it has become the favored method for consumer class actions (such as this) in the Seventh Circuit. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994); *In re Cap. One TCPA Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (finding percentage-of-the-fund to be the "normal practice in consumer class actions" and the "most efficient" and "most likely to yield an accurate approximation of the market rate").

Courts have explained that "[t]he percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers." *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (easier to establish market based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth,"); *Gaskill v. Gordon*, 942 F. Supp. 382, 386 (N.D. Ill. 1996) (percentage-of-fund method "provides a more effective way of determining whether the hours expended were reasonable"), aff'd, 160 F.3d 361 (7th Cir. 1998). Courts have also explained that the percentage of the fund method can be just as effective as the lodestar method at determining a reasonable fee since both methods require the court to "consider the circumstances of the case." *Id.* at 386 (citing *Donovan v. Robbins*, 588 F. Supp. 1268, 1272 (N.D. Ill. 1984)).

Lastly, a lodestar cross-check is not required in the Seventh Circuit. *See Williams v. Rohm*

24

& *Haas Pension Plan*, 658 F.3d 629, 636 (7th Cir. 2011) ("[C]onsideration of a lodestar check is not an issue of required methodology.")); *In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d 838, 849 (N.D. Ill. 2015) ("A district court is under no obligation to cross check the requested fees against the lodestar."); *Bell v. Pension Comm. of Ath Holding Co. LLC*, 2019 WL 4193376, at *5 (S.D. Ind. Sep. 4, 2019) (noting that the use of the lodestar cross-check in the Seventh Circuit "is no longer recommended") (citing *In re Synthroid Marketing Litig.*, 325 F.3d 974, 979-80 (7th Cir. 2003)). Thus, the percentage method should be utilized here.

**B.    The Requested Fee is Reasonable and Appropriate.**

Class Counsel's requested fee of $833,333.33, which is equal to 33.33% of the Cash Settlement Fund, is reasonable and consistent with market rates and with Seventh Circuit precedent. The Seventh Circuit has held that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund … in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis. The typical contingent fee is between 33 and 40 percent…" *Gaskill*, 160 F.3d at 362 (emphasis added) (upholding the award of 38% of a $20 million settlement). Indeed, district courts within the Seventh Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale*, 2018 WL 6606079 at *10; *see also Behrens v. Landmark Credit Union*, 2018 WL 3130629, at *6 (W.D. Wis. June 26, 2018) ("And generally, a 33 to 40 percent contingency fee is considered consistent with the market rate and reasonable."); *Martin v. Caterpillar Inc.*, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) ("[C]ourts in the Seventh Circuit award attorney fees 'equal to approximately one-third or more of the recovery.' . . . The Seventh Circuit itself has specifically noted that 'the typical contingent fee is between 33 and 40 percent.'") (citation omitted). Here, Class Counsel's requested fee of $833,333.00, which is equal

to 33.33% of the Cash Settlement Fund, is well within the range of typical contingency fee arrangements in this Court.

In assessing the market price for legal services, "in light of the risk of non-payment and the normal rate of compensation in the market at the time," district courts review factors including the quality of the attorneys' performance, the amount of work necessary to resolve the litigation, the stakes of the case, and the complexity, length, and expense of the litigation. *Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007); *see also Synthroid I*, 264 F.3d at 721; *Isby*, 75 F.3d at 1198-99. As explained below, these factors weigh in favor of Class Counsel's attorneys' fee request.

### i. Class Counsel Assumed the Risk of Non-Payment

Courts emphasize the financial risk class counsel assumed in taking on a class action when evaluating reasonableness of a fee request. *See In re Dairy Farmers of Am., Inc.*, 80 F.Supp.3d 838, 847 (N.D. Ill. 2015); *see also Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of non-payment. The greater risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50% chance of a favorable outcome should be $2 million.").

Class Counsel initiated the lawsuit knowing that it would require significant time, effort, and money to achieve a successful resolution of the matter. JD. ¶42. C&D intended on pursuing several defenses in the lawsuit, including that: 1) Plaintiffs do not allege any injury capable of supporting Article III standing; 2) Plaintiffs' causes of action failed to state a claim for relief; 3) Plaintiffs' claims are preempted by the Federal FDCA; and 4) the action should be stayed under the doctrine of primary jurisdiction pending the FDA's review of Valisure's petition. Given these

risks, Class Counsel "could have lost everything" they invested. *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992) (Posner, J.). As such, the significant risk Class Counsel accepted by taking on this matter on a contingency basis weigh in favor of approval of the requested fee.

### ii.  The Quality of Class Counsel's Performance

Class Counsel secured an excellent result for the Settlement Class despite the challenges the Action presented. There is significant monetary and injunctive relief benefiting hundreds of thousands of people. Agreement ¶¶86, 87. The Settlement provides real benefits that will be available to Settlement Class Members in the very near future, rather than years from now, because of the efficient settlement of the case. This is a further enhancement to the value of the Settlement. *See Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 309 n.3 (7th Cir. 1985) (recognizing that at a prime interest rate of 12.5 percent of a $2 million settlement sum today is worth the same as a $3.6 million recovery five years from now). Class Counsel's experience litigating consumer class actions and the quality of their performance support the requested fee.

### iii.  The Complexity, Length, and Expense of the Litigation

Benzene consumer product class action lawsuits are complex, risky, and expensive to litigate, especially when considering the numerous unresolved issues that they present. Class Counsel were aware that pursuing this Action beyond settlement would be lengthy and expensive–it would require formal discovery, briefing, argument, trial, and potential appeals. All of this would require thousands of hours. The costs are also another factor. Experts alone here would likely cost in the tens of thousands to hundreds of thousands of dollars.

As discussed herein and in Class Counsel's supporting declaration, investigating, prosecuting, and settling this matter required considerable commitment of time and resources.

Class Counsel zealously represented the interests of the Settlement Class from the inception of this Action and will continue to do so through Final Approval. Class Counsel expended substantial time and effort in the prosecution of this Action, and their coordinated efforts were critical to achieving a substantial Settlement for the Settlement Class. JD. ¶¶3-27, 32, 43-44. Class Counsel expect to maintain a high level of oversight and involvement in this Action and will continue to incur significant amounts of time given the future work still needed for completion of the Settlement, including, but not limited to continuing to oversee Claims administration and answering Settlement Class members' questions; responding to any potential objections; preparing for and appearing at the Final Approval Hearing; and resolving any appeals. Class Counsel will also monitor C&D to ensure that it complies with its obligations related to the injunctive relief herein. *Id.* at ¶44. As such, this factor weighs in favor of the requested fee.

### iv. The Stakes of the Case

Class action lawsuits are high stakes litigation, and consumer product class action lawsuits come with their own set of uncertainties. Settlement Class members' claims could have faced a number of defenses, such as the possibility that the Court would dismiss some or all of their claims, decline to certify the Settlement Class or decertify the Settlement Class, or that Plaintiffs would not prevail at trial. This factor weighs in favor of approving Class Counsel's fee request because despite the uncertain nature of the Action, Settlement Class Members are nevertheless receiving real benefits under the Settlement.

Accordingly, Class Counsel's fee request of $833,333.33, which is equal to 33.33% of the Cash Settlement Fund, meets the factors for reasonableness, is within the well-established 33% to 40% range of fee requests in class action litigation in this Circuit, and should be granted.

### C.    The Court Should Reimburse Class Counsel for their Costs.

"It is well established that counsel who create a common fund … are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Hale*, 2018 WL 6606079, at \*10; *see also Spicer v. Chi. Bd. Options Exch., Inc.*, 844 F. Supp. 1226, 1256 (N.D. Ill. 1993) (noting courts regularly award reimbursement of reasonable expenses necessarily incurred in the course of litigation). Here, Class Counsel request reimbursement for a total of $12,927.90 in costs. JD. ¶47. This sum corresponds to certain actual out-of-pocket costs and expenses that Class Counsel necessarily incurred and paid in connection with the prosecution of the Action and the Settlement. *Id.* Class Counsel are not seeking all of their costs and expenses. *Id.* Class Counsel only seek reimbursement for filing fees, process server fees, and mediation-related expenses. *Id.* These out-of-pocket expenses were reasonably and necessarily incurred and paid in furtherance of the prosecution of this Action. *Id.*

### IV.    CONCLUSION

This Settlement more than satisfies the fairness, reasonableness, and adequacy standard of Rule 23(e)(2), as well as the class certification requirements of Rules 23(a) and (b)(3). Further, Class Counsel's Application for Attorneys' Fees, Costs and Service Awards is reasonable under the circumstances.

Accordingly, Plaintiffs respectfully request that this Court: (1) grant Final Approval of the Settlement; (2) certify for settlement purposes the Settlement Class pursuant to Rule 23(a), 23(b)(3), and 23(e); (3) re-appoint Emily Evans and Caitlin Hassett as Class Representatives; (4) re-appoint as Class Counsel the law firms appointed in the Preliminary Approval Order; (5) approve the requested Service Awards in the amount of $2,500.00 to each Class Representative;

(6) award Class Counsel attorneys' fees in the amount of $833,333.33, and the reimbursement of litigation costs in the amount of $12,927.90; and (7) enter Final Judgment dismissing the Action with prejudice. A proposed Final Approval Order as to the Settlement is attached as ***Exhibit 4***, and a proposed Order Granting the Application for Attorneys' Fees, Costs and Service Awards is attached as ***Exhibit 5***

Dated: September 1, 2023

Respectfully submitted,

**KOPELOWITZ OSTROW P.A.**
Jeff Ostrow
Kristen Lake Cardoso
One West Las Olas Blvd., Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
E-mail: ostrow@kolawyers.com
cardoso@kolawyers.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot* (pro hac vice)
Max S. Roberts
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
E-mail: swestcot@bursor.com
mroberts@bursor.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC**
Gary M. Klinger
Nick Suciu III
Erin J. Ruben
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
E-mail: gklinger@milberg.com
nsuciu@milberg.com
eruben@milberg.com

*Attorneys for the Plaintiffs and the Settlement Class*